# DUERST v. ST. LOUIS STAMPING COMPANY, Appellant.

## Division One, June 12, 1901.

1. **Pleading:** CAUSE OF ACTION: SUFFICIENCY: ANSWER. When the defendant files an answer and puts in issue the averments of the petition without having previously challenged their sufficiency by demurrer, or otherwise, it is too late to do so after the jury is sworn, if the language in the petition is susceptible of a construction that states a cause of action.

2. ———: DEFECTIVE TOOLS: KNOWLEDGE. It is not necessary for plaintiff, in an action for damages for defendant's negligence in furnishing defective tools with which to work, to allege in his petition that he did not know of the defect in the tool at the time he was injured. If he knew it in such way as to preclude his recovery, it was a matter of defense.

3. **Negligence:** TOOLS: OBVIOUS DEFECTS. Plaintiff's eye was put out by a small particle of steel which flew therein while he was striking with a hammer a curved or looped wire which ran through a groove in a mandrel. The handle in the hammer he was using becoming loose, he applied to the foreman for another one; it was not furnished at first, but finally obtained. It was of the best factory known in the market, but soon after he began using it he noticed that it began to chip off, and he took it to the foreman and drew his attention to the defect and after a superficial examination he assured him it was "all right." The foreman was experienced and the plaintiff little experienced in the business. *Held,* that these facts being true, plaintiff had the right to rely on the superior knowledge of the foreman and to resume work, the danger in using the hammer not being so obvious as to justify him in refusing to return to his work after the foreman's assurance.

4. ———: ———: DEFECTS: FACTS FOR JURY. Where the testimony of the plaintiff's witnesses was, that the hammer struck the curved wire and not the mandrel, and that of defendant's experts that the hammer would not chip from striking the wire, and that if it chipped

it probably struck the mandrel, the conflict of evidence became a fact for the jury.

5. ——: ——: ——: ——: INFERENCE. Often the triers of facts reach a conclusion from reasoning upon probabilities without positive proof. And where the particle which put out plaintiff's eye was so infinitesimally small that an expert chemist, by using a magnifying glass and magnet could not tell whether it was steel, cast iron, or iron oxide, and there was evidence that the hammer had chipped off, and none that the wire would from striking it, the jury were justified in concluding that it was a particle from the hammer that injured the eye.

6. ——: DEFECTIVE TOOL: NEGLIGENT USE: INSTRUCTION. Where the plaintiff bases his action on a defective hammer which chipped off as he struck the curved wire, which it was his duty to strike, and the defense is contributory negligence, the defendant is entitled to an instruction to the effect that the jury must find for defendant if they find from the evidence that the injury to the eye caused by the flying particle, was not produced by the hammer striking the wire, but by his negligent use of the hammer in striking the mandrel in which the wire moved, if there is evidence from which such inference may be drawn. And it is reversible error to refuse such an instruction unless the point is covered by some other instruction given.

Appeal from St. Louis County Circuit Court.—*Hon. Rudolph Hirzel,* Judge.

REVERSED AND REMANDED.

*Wm. F. Broadhead* and *F. C. Sharp* for appellant.

(1) The petition on which this suit is founded does not state facts sufficient to constitute a cause of action. It is not a defective statement of a good cause of action, which would be cured by a judgment, but is fatally defective. There is no allegation of negligence on the part of defendant. It is not alleged that the defendant furnished a tool dangerous to plaintiff for the kind of business in which he was engaged; nor that

Duerst v. St. Louis Stamping Co.

defendant furnished a dangerous or unsafe hammer at all; nor that the chipping of the hammer was because it was so defective as to not be a reasonably safe tool for the purpose for which plaintiff was using it; nor that the defect was latent, nor that the plaintiff was not aware of the defect and could not have known of it by the exercise of ordinary care. All the facts which constitute a cause of action must be stated. Scott v. Robards, 67 Mo. 289; Pier v. Heinrichoffen, 52 Mo. 333; Christian v. Ins. Co., 143 Mo. 460; Bredell v. Alexander, 8 Mo. App. 110; Weil v. County, 69 Mo. 281; Cooke v. Putnam County, 70 Mo. 668; Clark y. Whittaker Iron Co., 9 Mo. App. 646; Peck v. Bridwell, 6 Mo. App. 451; Staley v. Wallace, 21 Mo. App. 128; Weler v. Life Ins. Co., 5 Mo. App. 51; Story v. Ins. Co., 61 Mo. App. 534; Freemark v. McKinney, 55 Mo. App. 435. By pleading to the merits a defendant waives everything in the petition except that it does not state facts sufficient to constitute a cause of action, and the court's jurisdiction. Paddock v. Somes, 102 Mo. 226; Seckinger v. Philibert, 129 Mo. 590; Poe v. Domic, 48 Mo. 441; Hall v. Johnson, 57 Mo. 521; Sappington v. Railroad, 14 Mo. App. 86. (2) If on the plaintiff's evidence, in an action to recover damages for injuries alleged to have been sustained through the negligence of defendant, it clearly appears that plaintiff was himself guilty of carelessness and negligence which contributed directly to the injury he complains of, he can not recover, and the court should so instruct the jury. This the court refused to do. Epperson v. Cable Co., 155 Mo. 346; Bradley v. Railroad, 138 Mo. 293; Hogan v. Railroad, 150 Mo. 36; Nolan v. Shickle, 69 Mo. 340; Fletcher v. Railroad, 64 Mo. 488; Schoab v. Wheel Co., 56 Mo. 176; Morrissey v. Ferry Co., 43 Mo. 383. (3) If the servant, before he enters the service, knows, or if he afterwards discovers, or if by the exercise of ordinary observation or rea-

sonable skill and diligence in his department of service, he may discover that the building, premises, machine, appliance, or fellow servant in connection with which or with whom he is to labor, is unsafe or unfit in any particular, and if, notwithstanding such knowledge, or means of knowledge, he voluntarily enters into or continues in the employment, without objection or complaint, he is deemed to have assumed the risk of the danger thus known or discoverable, and to waive any claim for damage against the master in case it shall result in injury to him. 2 Thompson on Negligence, sec. 1008; Thomas v. Railroad, 109 Mo. 187; Price v. Railroad, 77 Mo. 508; Hulett v. Railroad, 67 Mo. 239. (4) The servant, when he enters his master's employ, assumes not only the risks incident to his employment, but all dangers which are apparent and obvious as a result thereof. The work plaintiff was required to do was not extra hazardous, but was the work he was employed to do. He was not ignorant of the danger of doing this work, but says he knew his danger. The danger of using a hammer that was chipping he knew; he was employed to make his work profitable to the master; he could see and study the hammer, and was bound to know that the same force that would make other hammers chip and cause the bleeding of hands and faces of other workmen from such chips, would, if applied to his eye, cause its destruction, and in addition to all this he negligently continued to use the hammer, knowing its defective condition, although he had a half dozen other hammers on the table at the time. Steinhouser v. Spraul, 127 Mo. 541; Lucey v. Oil Co., 129 Mo. 32; Halloran v. Foundry Co., 133 Mo. 470; Fugler v. Bothe, 117 Mo. 475; Bradley v. Railroad, 138 Mo. 293; Winkler v. Basket Co., 137 Mo. 394; Nugent v. Milling Company, 131 Mo. 241. (5) The plaintiff did not rely on any assurance of the master. In fact, he was fully informed of the peril and chose to continue his work. No principle is better estab-

Duerst v. St. Louis Stamping Co.

lished than that under such circumstances the risk is assumed, and he does not rely on the assurance of the master. Epperson v. Cable Co., 155 Mo. 378; Fulger v. Bothe, 117 Mo. 500; Junior v. Power Co., 127 Mo. 82.

*Wm. F. Woerner* and *F.* and *Ed. L. Gottschalk* for respondent.

(1) The court properly refused to nonsuit plaintiff on the merits. (a) The general rule is, that where the facts with respect to the negligence of the parties are such that reasonable minds might differ with respect thereto, the case should go to the jury. The issue as to contributory negligence must always be submitted to the jury, unless the only rational inference to be drawn from the undisputed facts excludes the idea that such care was observed by plaintiff as a person of ordinary prudence would have exercised under the particular facts of the case. Threlkeld v. Railroad, 68 Mo. App. 131; Doyle v. Trust Co., 140 Mo. 15; Huhn v. Railroad, 92 Mo. 450; Bender v. Railroad, 137 Mo. 245; Hamman v. Cent. C. & C. Co., 156 Mo. 232. The trial court will, on the application to nonsuit the plaintiff, indulge in his favor every inference of fact which the jury may draw. Lee v. Knapp, 137 Mo. 385; Alcorn v. Railroad, 108 Mo. 81. (b) The defect was not an obvious one to plaintiff; the jury so found on defendant's instruction, telling them no recovery could be had if it was obvious. But even if it had been, there are numerous cases in this State that hold that mere knowledge of a defect in the appliance with which the servant is working will not, as a matter of law, bar a recovery, unless such instrumentality is so glaringly imperfect as to threaten immediate injury—so defective that a man of ordinary prudence would see that it could not be used with great care and skill. Warner v. Railroad, 62 Mo. App. 184; Huhn v.

Railroad, 92 Mo. 440; Helfenstein v. Medart, 136 Mo. 595; Bender v. Railroad, 137 Mo. 240; Steinhauser v. Spraul, 114 Mo. 551. (c) The plaintiff had a right to rely on the foreman's assurance that the hammer "was all right" and in good condition, when plaintiff specially asked him about it. Even when the condition of the instrument, machinery or place is such as to threaten injury, and the servant observes it, yet if the master assures the servant that there is no immediate danger, and orders him to proceed, it will then be left to the jury, or trier of facts, to determine if the servant was negligent in heeding such assurance and obeying orders. Plaintiff had a right to rely on the superior judgment of the master mechanic. The duty of inspection and repair rested on the latter; obedience, on the former. Hence, it is said that the master and servant are not on equal terms in this regard. Halliburton v. Railroad, 58 Mo. App. 27; Stephens v. Railroad, 96 Mo. 207; Herdler v. Buck Stove Co., 136 Mo. 17; Sullivan v. Railroad, 107 Mo. 78; Doyle v. Trust Co., 140 Mo. 19; Warner v. Railroad, 62 Mo. App. 192; McGowan v. Railroad, 61 Mo. 532; Rowland v. Railroad, 20 Mo. App. 467; Gutridge v. Railroad, 105 Mo. 526. (2) As to the sufficiency of the petition. (a) The petition would have been good even on direct attack by demurrer. Plaintiff is not required to use any stereotyped phrase or particular word in his petition, in order to bring home to defendant knowledge of the ground on which the action is brought. There is no magic in the word "negligence." The allegation that he was injured by reason of the defective condition of a hammer furnished by defendant, to use in its employ, which defendant well knew was defective, or by the exercise of ordinary care and caution might have known was defective, is equivalent to a charge of negligence, since such an act is in itself a negligent one. To have said that the hammer was "negligently" furnished, would have added no force to the petition that was not

already there.   The purpose of all petitions—to notify the defendant what he has to contend with—is here fully accomplished.   (b)  But defendant is attacking the petition after he has had the benefit of a fair trial, and after verdict and judgment.   Under such circumstances the petition is good unless it radically and wholly fails to state a cause of action.   That it is defectively or imperfectly stated will not avail the defendant. R. S. 1899, sec. 672, subd. 8 and 9; Johnson v. Railroad, 96 Mo. 340; Spurlock v. Railroad, 93 Mo. 530; Wilcoxson v. Darr, 139 Mo. 675; Seckinger v. Mfg. Co., 129 Mo. 590.

VALLIANT, J.—Action for damages for personal injuries.

Defendant is a corporation engaged in manufacturing articles of tinware and granite ironware.   Plaintiff was an employee of defendant; his work was to insert the curved or looped end of a wire handle into a part of a utensil in process of manufacture, and strike it with a hammer with a sufficient force to close the curved end so that it would not slip out.   For this work plaintiff was furnished with a steel mandrel, attached to his workbench, and a steel hammer; there was a groove in the mandrel into which the wire was laid to receive the stroke of the hammer.   While engaged in this work, upon a stroke of the hammer, a very small particle of what the plaintiff's testimony tended to show was a steel chip from the hammer flew with force into the plaintiff's eye; the result was great suffering and ultimate loss of the eye, which the surgeons had to cut out of its socket.

The negligence charged in the petition is in these words: "That the said hammer and tool provided by defendant to plaintiff was defective in its material, as defendant well knew, or by the exercise of reasonable caution or care might have known, and that on or about March 23, 1896, while plaintiff was using

same in performing his duties, as above set forth, a piece of the steel or iron of said hammer, by reason of said defective condition, chipped off and flew into plaintiff's right eye causing the total destruction thereof," etc.

The answer was a general denial and a plea that the plaintiff "was performing his labor in a careless, improper, dangerous, unworkmanlike and negligent manner, and in so doing was guilty of negligence directly contributing," etc.

The reply was a general denial.

The plaintiff's testimony tended to show that at the time of the accident he was twenty years and a few months old, was a baker by trade, but had been in the employ of defendant about six months and for the six weeks next preceding had been engaged in work of the kind he was doing when he suffered the injury; that a few days before, he complained to a fellow workman that the hammer he was using was too much worn to do satisfactory work, and asked this fellow workman to apply to the foreman for a new hammer for him, which was done, and the foreman promised a new hammer, but forgot to attend to it, and the plaintiff himself went to him and made the request. The foreman said, "Wait, and I will get you one; Loewe (the fellow workman referred to) told me already yesterday, but I forgot about it." But the foreman still did not furnish the new hammer as requested, and Loewe went to the defendant's man who keeps such supplies for the employees and obtained a new hammer and gave it to plaintiff. That was on Saturday; the accident occurred the next Monday. Almost as soon as plaintiff began to work with the new hammer he noticed that chips flew off it, and he took it to the foreman and showed it to him, saying: "I believe this hammer is no good, it chips off on one side;" the foreman took the hammer in his hand, examined it, and handed it back to plaintiff, saying it was all right, and the plaintiff returned to his bench and resumed work with it.

On the next Monday morning, about ten o'clock, while thus working with the hammer, a piece chipped off and struck plaintiff in the eye; his suffering was great and his eye entirely destroyed.

The testimony of plaintiff and that of his witness Loewe, who said he was looking at him at the time, was that on the stroke which resulted in the accident, the hammer struck the wire and did not strike the mandrel. That was the only direct evidence on that point, no other witnesses professing to have seen it.

E. B. Roth, an expert in tools, testified for plaintiff that he had tested this hammer, and whilst it had the usual appearance of a factory hammer, yet it was too hard, as he had found by testing it with a file; the degree to which it was hardened could not be discovered by looking at it, but only by testing it with the file or emery wheel; a hammer once showing a tendency to chip is not safe to use without grinding a beveled edge; when once a chipping begins it usually continues. Upon cross-examination this witness said that if the mandrel was of hard steel, the striking of it by the hammer was liable to result in a chipping of the hammer, but that the hammer would not break by striking the wire; that this hammer was of first-class brand, the best in the market.

On the part of defendant the testimony tended to show that the foreman, when applied to for a new hammer for plaintiff, told him he had no time to attend to it, and that he (the foreman) did not know that a new hammer had been furnished to plaintiff until after the accident; that plaintiff had never shown him the hammer, or told him it was defective; that sometimes in the kind of work the plaintiff was doing a man would miss the bail or wire and hit the mandrel; that all men in that work are liable to such mislicks, but the more experienced less apt to do so; that hitting the mandrel might cause the hammer to chip,

but hitting the wire would not; in the opinion of experts this hammer was caused to chip by hitting the mandrel; that this hammer was of the best factory known in the market, and that whilst some may be tempered too hard, that condition could not be discovered by looking at them, but only by experience or experiment. There was testimony for defendant also showing that the fragment that struck the plaintiff in the eye had been examined by a chemist under a magnifying glass and with a magnet, but it was too small to permit of an analysis and could not be classified either as steel, cast iron or iron oxide.

At the close of the plaintiff's evidence and again at the close of all the evidence, the defendant asked an instruction to the effect that the plaintiff was not entitled to recover which was refused and exception taken.

The court instructed the jury as follows, at the request of the plaintiff:

"1. The court instructs the jury that it was the duty of the defendant, as employer, to furnish to the plaintiff who was in its employ, such tools, appliances and instrumentalities as were reasonably safe for the purpose for which they were used; and the court instructs the jury that if they believe from the evidence that the defendant company furnished plaintiff with a hammer to be used in the performance of his duties as such employee, which it knew to be defective, or which it, or its agent or foreman whose duty it was to superintend the plaintiff's work, knew to be defective, or which by the exercise of reasonable diligence the company or its said agent might have known to be defective, and liable to chip off, and that in consequence of such defect the plaintiff, while exercising ordinary care, was injured while in the performance of his duties, then the jury should find for the plaintiff.

"2. The court instructs the jury that knowledge by, or notice given to, the company's foreman who had charge of the

plaintiff, upon a matter within the scope of said foreman's authority, was such knowledge by, or notice to, the company itself, within the meaning, of those instructions.

"3.    The court instructs the jury that if they believe from the evidence that the plaintiff called the attention of the defendant company's foreman, under whose direction and supervision he was working, to the condition of the hammer plaintiff was using in his duties, and inquired whether the same was in proper condition and safe for him to use, and that said foreman informed plaintiff that it was, then plaintiff had a right to rely upon the supposed superior knowledge of said foreman, and was justified in continuing in good faith the use of said hammer, without being guilty of contributory negligence, unless you further find that the danger was obvious, and that the plaintiff was fully aware of the same.

"4.    The court instructs the jury that although they believe from the evidence that the hammer in question was not directly furnished by defendant, but was furnished by a co-employee in violation of the rules of the company, yet if the jury also find from the evidence that the company's foreman under whom plaintiff worked, was aware of the fact that plaintiff was using same in performing his duties, and gave his consent or sanction to such use, or instructed plaintiff to continue using it, then the liability of the defendant thereafter was just the same as if it had originally furnished plaintiff with said hammer.

"5.    The court instructs the jury that if they find for the plaintiff they must assess his damages in such a sum, not exceeding $15,000, as they believe from the evidence will fairly compensate him for the injuries sustained; and in determining such amount they may take into consideration not only the pecuniary loss, if any, heretofore sustained by the plaintiff by reason of such injury, but also such loss, if any, as the jury believes from

the evidence he may hereafter sustain by reason of his lessened earning capacity for the remainder of his lifetime; and the jury may further take into consideration the physical pain, suffering and mental anguish resulting from such injury, and the deformity in his appearance.

"6.    The court instructs the jury that the defense of contributory negligence is an affirmative one, and that the burden of proof to establish by a preponderance of the evidence such facts as will constitute such defense lies on the defendant company."

And at the request of defendant the court gave the following:

"3.    The court instructs the jury that it is the duty of the master to supply to his servants reasonably safe and suitable tools and appliances to enable his servants to discharge their duties with reasonable safety.    This duty of the master is discharged if, in the selection of such tools and appliances, it exercises the care of an ordinarily prudent person similarly situated.    He is not an insurer of the safety of his servant.    The servant assumes all the ordinary and usual risks attending his employment and if he uses the tools and appliances furnished by the master, knowing them to be dangerous or unsafe for use in the purpose for which they are intended, then the law regards the servant's so doing as a voluntary assumption by him of the increased dangers and risks occasioned by the use of such defective tools and appliances.    Hence, the court instructs you that even if you find from the evidence that the plaintiff was injured by reason of the hammer breaking and a piece thereof flying into his eye, yet if you also find and believe from the evidence that said hammer had broken before said accident and injury, and the plaintiff knew this fact and that he was fully aware of the danger arising from the use of said hammer, then the continuance of the use of said hammer was a voluntary

Duerst v. St. Louis Stamping Co.

assumption by him of the increased danger and risk and he can not recover.

"4. The court instructs the jury that if they believe from the evidence that the tools and appliances used by the plaintiff at the time of receiving the injury complained of were reasonably safe and suitable for the plaintiff to use in the performance of his duties, then he can not recover and the verdict must be for the defendant.

"5. Even if the jury find from the evidence that the hammer used by the plaintiff, when the injury was received, was defective and unsafe to use, and that defendant through its foreman or officers knew it to be defective and unsafe to use, yet if it further appear from the evidence that such defective and dangerous condition was obvious and was known to the plaintiff, and with this knowledge he continued to use the same until hurt, then the plaintiff can not recover, and your verdict must be for the defendant.

"6. The court instructs the jury that if they believe from all the evidence that the accident was caused by the careless and unskilled manner in which plaintiff handled or operated the tools used in his work, and that but for such carelessness and unskillfulness the accident would not have happened, then the plaintiff can not recover.

"7. The jury are instructed that the burden of proof is on the plaintiff to show that a piece of the hammer used by him when hurt chipped off and struck him in the eye; and if they should find from the evidence in the case that some other substance, and not a piece of the hammer, struck him in the eye and caused the injury complained of, then they must find a verdict for defendant.

"8. If the jury find from the evidence that the hammer used by the plaintiff when hurt was a new one, apparently free from defects when received by him, and was selected from a lot

of hammers furnished and to be used in the work which plaintiff was performing, which were of a brand or kind suitable or commonly used and reasonably safe to use and reasonably free from defects, and they should further find from the evidence that the plaintiff, before the accident, had not shown or exhibited said hammer to his foreman, that in the use of such hammer a piece of it chipped off and struck the plaintiff's eye, thereby causing the injury complained of, then such injury should be considered an accident, and your verdict must be for the defendant, even though it should appear from the evidence, that such hammer was defective and dangerous to use."

I. At the beginning of the trial defendant objected to any evidence on the part of the plaintiff because the petition did not state a cause of action; the overruling of the objection is assigned for error. The particular in which it is contended the petition fails is, in merely stating that the hammer was defective, without stating that it was not a reasonably safe tool; in other words, that the averments are equivalent only to saying that defendant did not furnish a perfect tool, and further that it does not state that plaintiff was ignorant of the defect.

1. The petition states that the hammer was defective in its material and defendant knew it or would have known it if it had exercised reasonable care and that as a result of that defect the plaintiff, while in the performance of his duty, received the injury complained of. If the defendant had understood the petition to mean only that defendant failed to furnish an absolutely perfect tool, it should have demurred to it, and by that means have tested the sufficiency of the statement. But instead of demurring, the defendant answered, denying the statement and averring that the plaintiff injured himself by his own carelessness in the use of the hammer. The plaintiff's petition is no more amenable to the criticism that it only charges a failure to furnish an absolutely perfect implement, than is the

defendant's denial of that charge equivalent to saying that the implement was perfect.    And if the plaintiff ought to have said in his petition that at the time of the accident he was himself exercising ordinary care, that omission is supplied by the averment in the answer that he was acting carelessly, which averment the reply denies.    When the defendant files an answer and puts in issue the averments of the petition without having previously challenged their sufficiency, it is too late to do so after the jury is sworn, if the language in the petition is susceptible of a construction that states a cause of action.    [Young v. Shickle, H. & H. Iron Co., 103 Mo. 324; People's Bank v. Scalzo, 127 Mo. 164; McDermott v. Class, 104 Mo. 14, l. c. 21, 22; Hutsell v. Crewse, 138 Mo. 1, l. c. 4.]

The petition with the answer and reply sufficiently made up issues to justify the court in proceeding with the trial.

2.    It was not necessary for the plaintiff to have said in his petition that he did not know of the defect in the hammer. If he knew it in such way as to preclude his recovery, it was a matter of defense, and such plea was not to be anticipated in the petition.    [Fisher v. Lead Co., 156 Mo. 479.]    If we construe the pleadings as strictly as defendant would have us do, we should find that the fact of the plaintiff's knowledge of the defect was really not in issue at all, because the defendant's plea of contributory negligence does not include that fact, but relates only to the manner of plaintiff in doing his work.    The court did not err in overruling the objection to any evidence in support of the petition on the ground stated.

II.    The plaintiff's testimony tended to show that the hammer in question was unfit for use and liable to produce the result that it did produce, and that the attention of the defendant's foreman was drawn to it and instead of testing it as he should have done he gave it only a superficial examination and returned it to the plaintiff with the assurance that it was "all

right." The foreman was an experienced man and the plaintiff had but little experience in that business, and, if his testimony was true, he had a right to rely in the superior knowledge of the foreman and resume work with the hammer, notwithstanding he had seen the chipping. He had a right to believe that the foreman's superior knowledge of such tools gave him to know after examining it, that although the hammer had chipped, yet it would not continue to do so, or that no danger from its use was to be apprehended. At all events, the danger from using it was not so obvious as to justify him in refusing to return to his work when the foreman returned the hammer to him with assurance of its good condition. [Stephens v. Railroad, 96 Mo. 207; Sullivan v. Railroad, 107 Mo. 66, 78; Herdler v. Buck Stove Co., 136 Mo. 3, l. c. 17; Doyle v. Trust Co., 140 Mo. 1, l. c. 19.]

The plaintiff's testimony also tended to show that when a hammer begins to chip it will continue to do so unless a beveled edge is ground on it, and that it is unsafe for use. It is true, the plaintiff's expert witness on cross-examination said that the. hammer would not chip if it struck the curved wire, and that if it chipped it was probably because it missed the wire and struck the mandrel, yet the plaintiff and Loewe both testified that in this instance it did hit the wire and did not hit the mandrel; that was a question of fact for the jury.

Appellant contends that there was no evidence to show that it was a steel chip from the hammer that struck the plaintiff's eye. The evidence showed that the object that did the injury was so infinitesimal that it could not be recognized, and of course it was impossible for the plaintiff to have seen it when it flew off the hammer, if it did so. The evidence was that the wire was soft and not likely to chip, and so was the metal of which the utensil in course of making was composed. It often occurs in the trial of a lawsuit that the triers of fact must reach

a conclusion from reasoning upon probabilities without positive proof. There was sufficient proof in this case to justify a jury in concluding that it was a small chip from that hammer that destroyed the plaintiff's eye. The court committed no error in giving the case to the jury.

III. The instructions given, both for plaintiff and defendant, correctly state the law of the case, except the sixth instruction for defendant which is too general. But the second instruction asked by the defendant and refused was also a correct statement of the law on the point it referred to, and was not covered by any other instruction. That instruction is as follows:

"2. The court instructs the jury that if they believe from the evidence that the only tools used by this plaintiff to perform his work, were a hammer and a mandrel, and that said tools were reasonably safe and suitable tools for the plaintiff to use in the performance of his duties, but that this plaintiff used the hammer in so careless a manner as to strike the mandrel instead of the wire handle of the utensil, and thereby caused a piece of the hammer to chip off and fly up and strike him in the eye, thus causing the injury, then the plaintiff himself was negligent and can not recover."

The court may have refused that instruction on the ground that there was no evidence to show that the plaintiff struck the mandrel instead of the wire. There was no positive evidence that such was the fact, but there was evidence from which, if deemed sufficient by the triers, they might lawfully have drawn that inference. The testimony of the experts, including the plaintiff's expert, was, that the hammer could not break by hitting the wire, but would break by hitting the mandrel. Against this was the positive testimony of the plaintiff and Loewe that he struck the wire and not the mandrel when the chip flew; but the jury were not obliged to believe them in the face of the

experts who said that that could not result.

The instruction does not mean. that the plaintiff can not recover if the chip was caused to fly by striking the mandrel, unconnected with any idea of negligence on his part. There was some testimony tending to show that striking the mandrel was sometimes inevitable, and if that is so, then, even if the plaintiff struck the mandrel, but without negligence on his part and the chip resulted from a defect in the hammer which rendered it not reasonably safe, the plaintiff would not be precluded. And on the other hand, if the striking of the mandrel and the flying of the chip are sometimes accidents inevitable, without either negligence of the operator or defect in the implement, then the consequence is a risk of the employment, and it is damage without injury.

But under this instruction the jury are directed to find for the defendant if the hammer was a reasonably safe tool and the chip resulted from negligence in striking the mandrel. The court erred in refusing that instruction.

The defendant's sixth instruction should have been refused because it does not refer to any act of the plaintiff which would constitute negligence, but authorized a verdict for defendant if the jury should find that the plaintiff was careless in any respect. An instruction should authorize a finding of negligence, only when it specifies the act which the jury is to find the party committed and which act constitutes negligence.

The only error we find in the record of which the appellant can complain is the refusal of its second instruction above mentioned. For this error the judgment is reversed and the cause remanded to the circuit court to be retried according to the law as herein expressed. *Brace, P. J.,* and *Marshall, J.,* concur; *Robinson, J.,* is of the opinion that the judgment should be reversed without remanding.