MULDERIG, Respondent, v. ST. LOUIS, KANSAS CITY AND COLORADO RAILROAD COMPANY and THE ST. LOUIS TRANSIT COMPANY, Appellants.

St. Louis Court of Appeals, February 27, 1906.

1. NEGLIGENCE: Ordinance: Pleading: Common Law Action. Where the violation of a city ordinance forms the basis of an action for damages against a railroad company, the ordinance must be specially pleaded before it can be introduced in evidence, but in a common law action for damages on account of the negligent operation of trains by a railroad company within the limits of a city, an ordinance defining its duties in that respect may be introduced in evidence for the purpose of proving negligence.

2. ————: ————: Evidence: Harmless Error. In an action for damages caused by the negligence of a railroad company in

operating its train, an ordinance defining certain duties of the defendant was improperly admitted in evidence where the evidence showed the ordinance was fully complied with, but the error was harmless.

3. ———: General Charge: Particular Acts of Negligence. In an action for damages caused by the negligence of the defendant, a general allegation of negligence in the petition is sufficient if not properly objected to, but an instruction to the jury authorizing a verdict on finding negligence in general without requiring a finding that the particular acts of negligence, which the evidence tended to prove, were committed, was reversible error.

4. ———: Practice: Instruction: Error Against One of Two Defendants. In an action for damages caused to plaintiff by the collision of the street car, in which he was riding, with a railroad train, brought against both the street railway company and the railroad company, an instruction which authorized a finding for one defendant but ignored certain evidence necessary to such finding, was erroneous and prejudicial to the plaintiff, but was not prejudicial error against the other defendant.

5. STREET RAILWAYS: Railroad Crossing: Duty of Conductor. Under section 1180, Revised Statutes of 1899, it is the duty of the conductor in charge of a street car, before crossing a railroad track, to stop his car and go forward to the track for the purpose of ascertaining whether a train is approaching, although the view of the track is unobstructed.

6. RAILROADS: Crossing Gates: Agency. A gate keeper in charge of the gates where a street crosses railroad tracks, is not only the employee of the railroad company which owns and maintains the tracks, but also of a railroad company which for a certain rental uses such tracks.

7. NEGLIGENCE: "Proximate Cause:" Instruction. In an action for damages caused by the negligence of defendant, an instruction authorizing a verdict on a finding of the proximate cause of the injury sued for, is erroneous where it fails to define the meaning of "proximate cause."

8. ———: Two Defendants: Appellate Practice. In an action against two defendants for damages caused by the negligence of both, where the plaintiff recovered judgment against both and the trial court committed error against one only, the judgment will be reversed as to both defendants, because if both were guilty they were tortfeasors and liable to contribute equally to the payment of damages assessed.

Appeal from St. Charles Circuit Court.—*Hon. H. W. Johnson,* Judge.

REVERSED AND REMANDED.

*W. F. Evans, A. H. Bolte, T. F. McDearmon, Frank A. Thompson* and *Jones, Jones & Hocker* for appellant, St. Louis, Kansas City & Colorado Railroad Co.

(1) The court erred in admitting in evidence section 1753 of the Municipal Code of St. Louis, McQuillin, 1901, because not pleaded and because a violation of it was not the proximate cause of the plaintiff's injuries. Eisenberg v. Railroad, 33 Mo. App. 85; State ex rel. v. Railroad, 46 Mo. App. 466; Judd v. Railroad, 23 Mo. App. 56; Danker v. Goodwin Mfg. Co., 102 Mo. App. 723, 77 S. W. 338; Welch v. Railroad, 26 Mo. App. 358; Robertson v. Railroad, 84 Mo. 119. (2) The court erred in admitting over objection of the Colorado Company, section 1748 of the Municipal Code of St. Louis, McQuillin, 1901, introduced by defendant St. Louis Transit Company, because it did not support the affirmative of any issue tendered by any of the pleadings and because the facts making it applicable were not shown. Gwins v. Van Studdiford, 86 Mo. 149; Mooney v. Kennett, 19 Mo. 552; Eisenberg v. Railroad, 33 Mo. App. 85. (3) The court erred in giving instruction numbered 3 asked by plaintiff, as it did not define the issues between plaintiff and this defendant but was a simple roving commission without restraint or guide. Goodwin v. Railroad, 75 Mo. 73; Sommers v. Transit Co., 108 Mo. App. 319, 83 S. W. 268. (4) The court erred in refusing instruction 6 offered by the Colorado Company. Klöckenbrink v. Railroad, 81 Mo. App. 351; Killian v. Railroad, 86 Mo. App. 473.

116 App—42

*Glendy B. Arnold* for appellant, St. Louis Transit Co.; *Boyle, Priest* and *Geo. W. Easley,* of counsel.

The court erred in giving on behalf of the defendant Colorado Road instructions numbered 5, 10, 12 and 7a. The court erred in refusing defendant Transit Company's requested instruction numbered 4..

*James A. Seddon* for respondent.

STATEMENT.—The suit was commenced in the circuit court of the city of St. Louis. The venue was changed to the circuit court of St. Charles county, where the case was tried. The facts are as follows: DeBalli-vierre avenue runs north and south, in the western part of the city of St. Louis, in the middle of which street the transit company has a double railway track, over which, in 1904, it operated street cars by electric power. The street and street railway tracks cross the tracks of the Wabash Railroad Company, which run east and west at about right angles. At the crossing the railroad company maintains gates on either side of its tracks which are in charge of a keeper. The gates are raised and lowered by the keeper or watchman by means of wire attachments. His station is in the gatekeeper's house, erected near the crossing and so constructed as to enable him to see east and west along the Wabash tracks. The defendant railroad company's track connects with or intersects the tracks of the Wabash Railroad Company about the center of the DeBallivierre avenue crossing. The defendant railroad company runs its trains from the point of intersection, into and from the city terminals over the Wabash tracks, paying therefor a certain rental and proportion of what might be called fixed charges, including the hire of the gatekeeper at the DeBallivierre avenue crossing. Near seven o'clock on the morning of January 21, 1904, the plaintiff was a passenger on one of the Transit Company's cars traveling south on DeBallivierre

avenue. When the car arrived at the Wabash crossing the gates were down and the car stopped four or five feet north of the north gate. A train of the defendant railroad company, called a drag, consisting of a locomotive engine and twenty-three cars, some of which were loaded with coal, passed, traveling west. Immediately behind it an engine and caboose of the Wabash Company also passed over the crossing. As soon as these trains crossed over the tracks of the defendant transit company, the gatekeeper raised the gates and the motorman in charge of the street car proceeded to cross the tracks at a slow rate of speed. At about the same time the defendant railroad company's drag train, that had just passed, began to back east and broke in two, releasing eight cars. These released cars proceeded on down the track toward the east and struck the transit company's car just in front of the hind trucks, turning the car completely around.

Plaintiff testified that when the car stopped at the crossing, he arose from his seat inside the car and went out on the front platform to be ready to step off as soon as the car reached the World's Fair entrance; that when the gates were raised and the car started to cross the tracks, he heard some people hallooing, and looked west and saw the coal train backing down and close upon the street car, so close that he did not have time to get off before the collision; that the force of the collision first threw him backward against the car, then forward against the brake, injuring his back and stomach very severely. The suit is to recover for the injuries thus caused.

The evidence for plaintiff tends to show that DeBallivierre avenue is an opened and traveled street.

The allegations of negligence and injury in the petition are as follows:

"That the defendants so carelessly and negligently operated, controlled and managed their said railroads and trains and cars at the intersection of said tracks of

defendants as that the above-mentioned car of defendant, St. Louis Transit Company, in which plaintiff was riding as a passenger, and a car of the St. Louis, Kansas City & Colorado Railroad Company, being propelled along its tracks near afore-mentioned intersection of tracks, came together and collided with great force and violence, and that by said violent collision and by reason of said negligence and carelessness of the defendants in operating their cars and trains and railways, plaintiff was violently thrown against the said car of defendant St. Louis Transit Company and parts thereof with such force as to cause great and permanent injury to plaintiff's person, and great and intense pain and suffering to plaintiff's body and mind, bruising and wounding his body, limbs and head, crushing and seriously injuring his intestines, bowels and stomach, making him sick, sore and weak, causing a severe shock to his nervous system and injuring him both externally and internally."

The answers of both defendants were general denials.

Louis W. Moss, the gatekeeper and a witness for plaintiff, described the scene as follows: "The Colorado brought a drag up and they were going by and they went by and pulled up above the puzzle switch quite a little piece and then a Wabash work engine pulled up and went up west as far as the depot, as far as the Forsyth Junction depot and they stopped; then I raised the gates and one car went through from the south going north, that went through, and I looked up the track again and I seen the Colorado had started back. I undertook to lower the gate then and there was this car right across, where this man was hurt on, right across there, and they was right under my gates; I couldn't let it down; then I jumped and run out on the outside and I hallooed for him to stop, but he paid no attention to me at all and come right on; well, when he got into the middle of the track he looked down the track and he seen another engine down there that was stopped; it was very foggy that morning,

and that engine had just come out of the fog, and he seen that, and then his car stopped perfectly still with the front end right by my house; well, it wasn't four feet from where I stood, the front end, but the Colorado was coming all the time, and I suppose he never looked up that way, I don't know." Witness stated that the transit company's car had not reached the Wabash tracks when he hallooed.   Witness further testified as follows:

"Q.   With what speed did it (the Colorado train) come back at this time?   A.   Well, it wasn't coming back so very fast as I thought, but when they seen that car in the track, standing on the track, they went to check up I suppose, and it broke in two; that was down grade, you see, it's down grade right smart, and these coal cars were loaded heavy and they were in motion and they come down with pretty good force.

"Q.   Did it strike the car with any force at all, the Transit car?   A.   Most assuredly; that car had about twenty-five or thirty tons of coal on, maybe forty, and of course it would strike the car with pretty good force.

"Q.   And what did it do with the car, the Transit car?   A.   It threw it clean around.

"Q.   What became of the car that struck it?   A. Why it passed right on down.

"Q.   How far down did it go?   A.   It went down may be fifty or sixty feet, something like that.

"Q.   West of DeBallivierre avenue?   A.   Yes, sir; they all hung together, eight cars; eight cars of coal, eight or ten."

The plaintiff and all his witnesses testified that they saw no brakeman on the backing train nor did they hear a bell rung.

Over the objection of both defendants, plaintiff read the following ordinance of the city of St. Louis in evidence:

"Sec. 1753.  *Cars—Streets not be obstructed by—bell to be rung—danger signals to be given.*   It shall not be lawful within the limits of the city of St. Louis for any

car, cars or locomotives propelled by steam power to obstruct any street crossing by standing thereon longer than five minutes, and when moving the bell of the engine shall be constantly sounded within said limits, and if any freight car, cars or locomotives propelled by steam power be backing within said limits, a man shall be stationed on top of the car at the end of the train farthest from the engine, to give danger signals, and no freight train shall at any time be moved within the city limits unless it be well manned with experienced brakemen at their posts, who shall be so stationed as to see the danger signals and hear the signals from the engine. The steam whistles of danger shall in no case be sounded except in giving the usual signals for running trains."

Dr. Waldo Briggs, a witness for plaintiff, testified as follows in respect to plaintiff's injuries: "On examination of the abdomen, where he complained of pain, there was extreme tenderness at the upper part of the abdomen. On making what is known as percussion, or striking over this area, I found a dullness, which indicates adhesions at that point. Where there had been an injury at this upper part of the abdomen inflammatory action followed this injury, leaving adhesions to the covering of the intestines themselves also the wall of the abdomen and evidently to other parts of intestinal tract. As the muscles of the abdomen are utilized in respiration in the expiratory act especially, the pain from the adhesion is increased. The pain oftentimes becomes such that the patient is confined to bed to relieve the pain and tormina. They are unfitted for work of any kind where it is necessary to utilize muscles, such as in manual labor, and the condition frequently becomes a progressive one, with the extension of adhesions to different parts within the abdominal cavity. That is his condition."

The plaintiff testified that prior to his injury he always enjoyed good health and had never had occasion to call a physician; that he was a hod carrier at the time of his injury and was earning $4.50 per day, and that in

St. Louis the wages of hod carriers range from $4.50
to $3.50 per day; that since his injury he has been unable
to work at his avocation.

For the defendant railroad company, the evidence
tends to show that defendant's drag train ran about seventy-five feet west of DeBallivierre avenue crossing and
then stopped and in a minute started to back east; that
the train broke in two eight cars from its rear or east
end and the released cars ran on and collided with the
street car; that a brakeman was on the east end of the
train and did his best to stop the released cars by using
the hand brakes but could not do so in time to prevent
the collision; that at the time of the collision the street
car was standing across the north Wabash track.  The
evidence also tends to show that a knuckle of the coupling car (No. 70327) broke and caused the train to separate; that this car had been inspected before being sent
out and was in good condition, and that it and all other
cars in the train were equipped with automatic couplings
all in good condition and of an approved pattern that was
in general use, and there was no defect in the knuckle
that broke and let the train part; that the engineer
sounded the whistle three times before commencing to
back the train and when it broke in two, immediately
gave an alarm whistle.

On the part of the transit company, the evidence
tends to show that after the defendant railroad company's train and the engine and caboose of the Wabash
Railroad Company passed the crossing and the gates
were raised, another engine of the Wabash Company,
coming from the east, was seen by the gatekeeper and,
being unable to lower the north gate, he ran out and hallooed to the motorman in charge of the transit company's
car to stop; that the gatekeeper then saw that the Wabash engine to the east had stopped and he flagged the
motorman to come on; that the motorman then proceeded to cross the Wabash tracks at half speed, but
when the head end of the car was about on the south

track of the Wabash Company (there being two tracks) he was compelled to check the speed of his car to prevent running over some men and women, who had just alighted from a Clayton car and were crossing the transit company's tracks immediately in front of the car for the purpose of taking a car going north and down town; that the motorman's attention was wholly absorbed by these people and the Wabash engine to the east and he did not see the defendant railroad company's cars coming from the west until they struck his car. The evidence also tends to prove that there was no brakeman on the cars that broke loose from the train and that the locomotive whistle was not sounded at all.

Over the objection of the defendant railroad company the transit company read the following ordinance of the city of St. Louis in evidence:

"Sec. 1748. *Gates at crossing required—watchmen.* Every person, association or corporation running or operating engines or cars propelled by steam power upon its railroad track or tracks, along or across any street, avenue or road in the city of St. Louis now, or which may hereafter be used for wagon travel, shall erect at all cross or intersecting streets, avenues or roads so used, or which may hereafter be used, a gate or gates made of wood or iron or other suitable material, and unless said gates are opened and closed automatically, such person, association or corporation shall keep a watchman to operate said gate or gates, who shall close the same immediately before the passage of any engine, car or train of cars and open the same immediately after such passage. Such gate or gates shall be so erected on such improved streets, avenues or roads within thirty days after such person, association or corporation shall be notified so to do by the street commissioner of the city. Provided, however, that this article shall not apply to any cross or intersecting avenue, streets or roads that are now or may hereafter be bridged over and across the railroad tracks; and pro-

vided, further, that this article shall not apply to any cross or intersecting streets, avenues or roads on which are laid tracks used exclusively for switching purposes, or switch tracks.'

The verdict and judgment were for plaintiff against both defendants and both appealed.

BLAND, P. J. (after stating the facts).—1. The defendant railroad company contends that as the petition does not allege that it violated city ordinance No. 1753, it was error to admit it in evidence for the purpose of proving the company guilty of negligence in failing to have a man stationed on the back end of the train. The petition alleges negligence, generally. The action is not based upon any ordinance or statute but is at common law. The authorities in this State are all one way that an ordinance of a city, which forms the basis of an action, must be specially pleaded, and if not pleaded cannot be introduced in evidence. [Robertson v. Railway, 84 Mo. 119; Danker v. Goodwin Mfg. Co., 102 Mo. App. 723, 77 S. W. 338; Welch v. Railway, 26 Mo. App. 358; Judd v. Railway, 23 Mo. App. 56.] But all of these cases hold that where the action is not based upon an ordinance, but is at common law, and where the ordinance itself does not give a right of action, but only prescribes a duty to be performed, the ordinance is admissible for the purpose of proving negligence. The ordinance offered in evidence furnishes no cause of action; it only prescribes certain duties to be performed by railroads operating trains within the limits of the city. It would be negligence to omit the performance of these duties and we think, on the authorities, supra, the ordinance was properly admitted in evidence.

2. The second point made by the defendant railroad company is that the court erred in admitting in evidence ordinance No. 1748 offered by the defendant transit company. It is not perceived for what purpose the ordinance was offered in evidence, for the testimony is all one way

that the ordinance had been complied with. The gates were erected, maintained and in charge of a watchman, whose competency was not questioned, hence no violation of the ordinance is shown by any of the evidence and, if it was error to admit it in evidence, the error was entirely harmless.

3.    The third point made by the defendant railroad company is that the court erred in giving the following instruction for plaintiff, to-wit:

"3.    The court instructs the jury that if you believe from the evidence that on the twenty-first day of January, A. D., 1904, the plaintiff was being conveyed as a passenger on one of the cars of the St. Louis Transit Company to the World's Fair Grounds and that while said car carrying the plaintiff was crossing the tracks of the defendant St. Louis, Kansas City & Colorado Railroad Company on DeBallivierre avenue in the city of St. Louis, it was struck by and collided with a car of said St. Louis, Kansas City & Colorado Railroad Company and that as a direct result of said striking and collision the plaintiff was injured and if you further believe from the evidence that said collision and injury to the plaintiff was directly caused in whole or in part by the failure of the defendant St. Louis, Kansas City & Colorado Railroad Company, its agents and employees to exercise ordinary care in operating its railroad and cars at said time and place, then you will find your verdict for the plaintiff and against the defendant St. Louis Kansas City & Colorado Railroad Company."

The court gave the following instruction defining ordinary care:

"4.    What constitutes ordinary care as mentioned in these instructions depends on the facts of each particular case. It is such care as a person of ordinary prudence would exercise (according to the usual and general experience of mankind) in the same situation and circumstances as those of the St. Louis, Kansas City and Colorado Railroad Company and its employees in this case, with

reference to whom the term ordinary care is used in these instructions. The omission of such care is negligence in the sense in which that word is used in these instructions."

Plaintiff contends that this instruction defining ordinary care should be read in connection with No. 3 (quoted) above, and when read together, they properly instructed the jury in respect to the issue of defendants' negligence. The instructions are as broad as the petition and no broader. But while a general allegation of negligence, unobjected to, is sufficient to entitle a plaintiff to proceed to make out his case, yet when it comes to instructing the jury, the instructions should call their attention to the particular acts or omissions, shown by the evidence, and which, under the law, constitutes negligence. Now, the plaintiff, to show negligence on the part of the defendant railroad company, relied on the ordinance and its violation by the omission of the railroad company to have a man stationed on the back of the train that collided with the street car, and their failure to ring a bell as the train backed. As contended by the defendant railroad company, the instruction utterly failed to direct the attention of the jury to the facts which, if proven, constituted negligence on its part.

In Sommers v. St. Louis Transit Company, 108 Mo. App. 319, 83 S. W. 268, the petition alleged general negligence. The evidence tended to prove specific acts of negligence. The instruction defining negligence was general. GOODE, J., condemning the instruction and reversing the judgment, at pages 323-4, said:

"The evidence left room for only three grounds of recovery at most, to-wit; running the car at an excessive speed, failing to sound the bell as it approached the intersection of the streets and failure on the part of the motorman to use due efforts to stop the car after he discovered the respondent's danger. The evidence possibly tended to prove each of those definite acts of negligence and thereby to support the respondent's cause of action;

and he was entitled to have the jury directed to find regarding those acts and no other. This does not mean that particular facts in evidence should be selected for comment; but that a jury should be told what acts on the part of a defendant, if found to have been done, constitute negligence in the eye of the law.   [Duerst v. Railroad, 163 Mo. 607; 63 S. W. 827; Allen v. Transit Co., 81 S. W. 1142; Lesser v. Railroad, 85 Mo. App. 326.] Instructions authorizing verdicts for any kind of negligence the juries might believe occurred  were condemned in those cases. In the Allen case a general instruction was given, the petition, as in the present case, charging general negligence only.   The Supreme Court remarked that whatever might be said concerning the sufficiency of the petition, the instruction should have defined the issues the jury were to try.   The first instruction given for this respondent authorized a verdict for him if the carmen carelessly and negligently caused and permitted the car to run against the wagon, while the fourth instruction," etc.

We think the instruction is clearly erroneous and calls for a reversal of the judgment.

4.   Counsel for the defendant railroad company challenges the correctness of other instructions given and assigns error for the refusal of certain other instructions asked by it. In view of the fact that the judgment must be reversed for the error above noted, we deem it unnecessary to further discuss this branch of the case.

5.   The defendant transit company assigns as error the giving of the following instructions asked by the defendant railroad company:

"5.   The court instructs the jury that if they find from the evidence that after the train and cars operated by the defendant St. Louis, Kansas City & Colorado Railroad Company had commenced backing from the west toward DeBallivierre avenue along which the tracks of the St. Louis Transit Company were laid, the servants and agents of the defendant St. Louis Transit Company caused its car mentioned in the evidence to undertake to

pass over and across the tracks of the defendant, the St. Louis, Kansas City & Colorado Railroad Company, along which the said train of the defendant St. Louis, Kansas City & Colorado Railroad Company was backing and so close to the train of the defendant as to prevent the employees of said company operating said train from being able in the exercise of ordinary care to stop said train in time to avert collision, then the plaintiff is not entitled to recover against the said defendant St. Louis, Kansas City & Colorado Railroad Company, even though the jury should further find that the employees of said company were negligent in commencing to back said train at the time and under the circumstances, and your verdict should be in favor of the said defendant St. Louis, Kansas City & Colorado Railroad Company."

"10. The court instructs the jury that it was the duty of the defendant St. Louis Transit Company to bring its cars to a full stop at least ten and not more than twenty feet before reaching the tracks of the defendant St. Louis, Kansas City & Colorado Railroad Company and to cause its conductor or some other employee of said company to go forward to the tracks of said railroad company for the purpose of ascertaining whether a train was approaching the crossing of said tracks and the failure if any so to do would be negligence, and if you find that the transit company failed so to do and such failure contributed to cause the plaintiff's injuries, if any, then said St. Louis Transit Company is liable to the plaintiff in this action."

"12. The court instructs the jury that if they find from the evidence that the person mentioned in the evidence as the watchman, L. W. Moss, was the employee of the Wabash Railroad Company and that the defendant, the St. Louis, Kansas City & Colorado Railroad Company had no control over the actions of said Moss, then the said defendant, St. Louis, Kansas City & Colorado Railroad Company, is not to be held liable in this action by reason of any negligence or carelessness of said

Moss."

And the transit company also assigns as error the refusal of the court to give the following instruction asked by it:

"4. The court instructs the jury that although they may find from the evidence that at the time and under the circumstances immediately preceding the collision mentioned in the testimony the said defendant the St. Louis Transit Company was in some respects negligent, nevertheless, if you further find that after the act or acts of negligence which you may find from the evidence to have been committed that the defendant the Colorado Railroad Company through its employees was guilty of negligence and that such negligence of the said defendant Colorado Railroad Company was subsequent to the act or acts of the negligence that you may find against the defendant the St. Louis Transit Company and that such subsequent negligence of the defendant Colorado Railroad Company was the direct and proximate cause of the plaintiff's alleged injuries then the defendant the St. Louis Transit Company is not liable to plaintiff and your verdict must be in favor of said defendant the St. Louis Transit Company."

Instruction No. 5 furnishes no just ground for complaint on the part of the transit company. It does not tell the jury that if they find the facts as herein recited, they should find against the transit company; it only says that they shall not find against the defendant railroad company. But the instruction is erroneous for the reason it ignores the evidence, that it was the duty of the railroad company to ring its bell as it backed its train, and to have a man on the end of the train, and was prejudicial to the plaintiff.

6. In respect to instruction No. 10, it is contended that the statute, sec. 1180, R. S. 1899, requiring the defendant to cause the conductor or some employee to go to the railroad track (at crossings) before running the car across, has no application to railroad cars where

the view of the track is unobstructed, as was the track at the DeBallivierre avenue crossing, nor where the railroad company maintains gates and a watchman, who is present and operating the gates. We will not attempt to engraft exceptions on the statute. It seems to us that there is some evidence tending to show that had the conductor been on the track, where the statute said he should be, instead of on the car that he could have been of some assistance in extricating the motorman from the state of confusion the evidence tends to prove he was in, and perhaps, have avoided the collision. In the circumstances, we think the instruction was properly given.

7. Instruction No. 12 should not have been given, for the reason it is in the teeth of the evidence, that Moss performed the same services for the defendant railroad company as he did for the Wabash Railroad Company and was as much the gatekeeper of the one as of the other, and for the further reason there is no evidence tending to prove that he was negligent; yet we doubt if the error was prejudical to the defendant transit company.

8. The court gave the following instruction in behalf of the railroad company:

"6a. The court instructs the jury that although they may find from the evidence that at the time and under the circumstances immediately preceding the collision mentioned in the testimony, the said defendant St. Louis, Kansas City & Colorado Railroad Company was in some respects negligent, nevertheless if they further find that such negligence did not contribute directly to the injuries, and that after the act, or acts of negligence which you may find from the evidence to have been committed by that defendant, the defendant St. Louis Transit Company, through its employees was guilty of negligence and that such negligence of the said defendant St. Louis Transit Company was subsequent to the act or acts of the negligence that you may find against the defendant the St. Louis, Kansas City & Colorado Railroad Com-

pany, and that such subsequent negligence of the St. Louis Transit Company was the direct and proximate cause of the plaintiff's injuries, then the said defendant the St. Louis, Kansas City & Colorado Railroad Company is not liable to plaintiff on account of said injuries and your verdict must be in favor of the defendant."

If instruction No. 6a, given in behalf of the railroad company is good law, then the refused instruction No. 4, asked by the transit company should have been given, for the latter is a counterpart of the instruction given in behalf of the railroad company. Plaintiff, however, criticises the instruction given, on the ground that it did not make it clear to the jury that they were to find that the negligence of the transit company was the sole, direct and proximate cause of the injury.

In Montgomery v. Railway, 181 Mo. l. c. 513, 79 S. W. 938, the Supreme Court, speaking of the use of the phrase, "proximate cause," in an instruction, said that it was more likely to mystify the jury than to assist them in reaching a conclusion.

In Clarke v. Kitchen, 52 Mo. l. c. 317, and Prince & Co. v. St. Louis Cotton Compress Co., 112 Mo. App. 49, 86 S. W. l. c. 878 the use of technical legal terms in instructions, without explanation, was condemned.

For the reason "proximate cause," in the above instructions, was not explained to the jury, we think both should have been refused, and we seriously doubt if the evidence warranted the giving of correct instructions on this feature of the case for either party.

9.    We find no prejudicial error against the transit company. But the defendants are charged as joint tortfeasors, and the plaintiff's evidence tends to prove that both were guilty as charged. Under our statute if both are found guilty and damages are assessed, the defendants should contribute equally to the payment of the damages and are entitled to contribution among themselves. For this reason the judgment is reversed and the cause remanded. All concur.