165    543
174    s 94

## CAMBRON v. OMAHA & ST. LOUIS RAILROAD COMPANY, Appellant.

### In Banc, December 3, 1901.

1. **Negligence: PLEADING: FAILURE TO OBSERVE SIGNALS.** It is held in this case that the petition states a good cause of action in negligence against a railroad company, founded on the failure of the engineer to observe signals from the plaintiff brakeman to back the train to take up a car and slow down for the coupling, which being disregarded and the train backed at a rapid rate of speed, the brakeman was run over.

2. ———: ———: ———: **CONTRIBUTORY NEGLIGENCE.** A petition that avers the giving by the brakeman of the proper signals to the engineer, the performance of his duty as brakeman, the negligence of the engineer in backing the train on him so rapidly and at such an unsafe speed that he could not safely make the coupling, his discovery of his danger caused by the engineer's negligence, his attempt to escape, and that before he could do so the train caught him, does not disclose contributory negligence on his part.

3. ———: **FELLOW-SERVANTS LAW: CONSTITUTIONAL.** The fellow-servants law of February 9, 1897, rendering railroads liable to their servants for the negligence of their fellow servants, is constitutional.

4. ———: **INSTRUCTIONS: SEEING SIGNALS.** To hold that the instruction in this case, which required the jury to find that the brakeman *gave* the proper signals to the engineer charged with negligently

running the train, did not require the engineer to *see* such signals before he could be charged with said negligence, would be a strained construction of the language used.

5. ———: CAUSAL CONNECTION BETWEEN NEGLIGENCE AND INJURY: INFERABLE PROOF. In order to permit a recovery on account of the negligent backing of a train at a too rapid rate, which ran over the brakeman whose duty it was to make the coupling of the car to take in which the train was being backed, and on account of the negligence of the railroad company in failing to have the engine equipped with brake-shoes, after it had been twice notified of their absence by the engineer in charge, such negligence must be shown to be the cause or a contributory cause of the brakeman's injury. But such causal connection need not be shown by direct proof. It is sufficient if the facts are of such a nature, and are so connected and related to each other, that the conclusion therefrom may be fairly inferred. *Held*, where it was clearly established that the engine had no brake-shoes, that this fact had been twice reported by the engineer to the company, that this equipment was essential and without it the brakes were useless, and the fireman's testimony is that the train was moving "as slow as the engineer could hold it," the jury were justified in inferring that the engineer could and would have run the train at a safe rate had the company not negligently failed to provide the brake-shoes. And an instruction predicated on such theory and evidence was proper, and the inference or finding therefrom is for the jury.

6. ———: MAKING UP TRAIN: SIGNALS FROM BRAKEMAN: CONTRIBUTORY NEGLIGENCE. The brakeman notified the engineer that a car was to be taken into the train, and alighted, threw his switch and gave the proper signal to back down, and then looking directly at the engineer who was leaning out of his cab at or near the switch, gave the signals to back three or four car-lengths and to slow down, and, then ran alongside the train till he reached the stationary car, set the pin according to universal custom, and then discovered that the train was coming back so rapidly that he could not make the coupling, and vainly endeavored to extricate himself from the danger in which either the negligence of the engineer in not obeying his signals, or of the company in not providing brake-shoes, had placed him, but was caught, and both legs were crushed. *Held*, that he was authorized in assuming that his signals would be obeyed, and was not guilty of such contributory negligence in placing himself in the dangerous place as precluded the submission of that issue to the jury.

7. ———: DAMAGES: $15,000. Plaintiff, a brakeman, twenty-two years old, six feet high, in good health, lost both legs because of defendant's negligence in backing a train over him, and has been left a hopeless cripple, besides undergoing the most terrible suffering. *Held*, the verdict of $15,000 is not so large as to be considered the result of passion or prejudice.

Appeal from Nodaway Circuit Court.—*Hon. Gallatin Craig,* Judge.

AFFIRMED.

*Ed. E. Aleshire* and *J. G. Trimble* for appellant.

(1) Objection to introduction of any evidence should have been sustained because the petition shows that plaintiff was guilty of contributory negligence. (2) Respondent's instruction number one is misleading and unintelligible. It is not sufficient that a skilled lawyer may be able to spell out correct legal principles from an instruction. It must be in plain and unambiguous language, affording the laymen of the jury a plain and intelligible view of the law without resort to conjecture. Crole v. Thomas, 17 Mo. 329; Young v. Ridenbaugh, 67 Mo. 574; Medlin v. Brooks, 9 Mo. 106; Otto v. Brent, 48 Mo. 23; Blanton v. Dold, 109 Mo. 77; State v. Darrah, 152 Mo. 543. (3) An instruction which ignores, or is unauthorized by, the evidence in the case is erroneous. Seckinger v. Philibert, 129 Mo. 591; Gorham v. Railroad, 113 Mo. 408; Benjamin v. Railroad, 50 Mo. App. 602; Williams v. Railroad, 96 Mo. 275. An instruction which undertakes to cover the whole case must be framed to meet all points raised by the evidence and pleadings on both sides, and plaintiff's first instruction is erroneous because it ignores the question of plaintiff's contributory negligence, raised by the answer and the evidence in the case. Clay v. Railroad, 17 Mo. App. 629; Ellis v. Wagner, 24

Vol 165 mo—35

Mo. App. 407; Brownfield v. Ins. Co., 26 Mo. App. 390; Wood Machine Co. v. Bobbst, 56 Mo. App. 427; Mallman v. Harris, 65 Mo. App. 127; Clark v. Hammerle, 27 Mo. 70; Barr v. Kansas City, 105 Mo. 550; Wyatt v. Railroad, 62 Mo. 408. (4) The peremptory instruction to find for defendant, asked at the close of the evidence, should have been given. (a) There was no negligence on the part of the engineer for the reason that he did not and could not know that plaintiff was in peril. Hogan v. Railroad, 150 Mo. 54; Kellny v. Railroad, 101 Mo. 67; Murray v. Railroad, 101 Mo. 236; Halligan v. Railroad, 71 Mo. 113; Henry v. Railroad, 76 Mo. 288; Rine v. Railroad, 88 Mo. 392. (b) Plaintiff was guilty of negligence which did not merely contribute to, but was the direct cause of, the injury, and is not entitled to recover. Railroad v. Williamson (Ala.), 21 So. Rep. 827; Sanders v. McGhee (Ala.), 21 So. Rep. 1006, and authorities cited; Hogan v. Railroad, 150 Mo. 55; Hudson v. Railroad, 101 Mo. 13; Finnell v. Railroad, 129 N. Y. 669; Huston v. Railroad, 38 S. W. 51; Gleason v. Railroad, 73 Fed. 647; George v. Railroad, 109 Ala. 245; Harlan v. Railroad, 64 Mo. 480. Plaintiff was not compelled to go upon the track in front of the train, but could have reached the coupling-pin easily while holding to the grabiron, and with both feet outside the rail. That would have been a safe way, but he chose the unsafe one and can not recover. Hulett v. Railroad, 67 Mo. 239; Moore v. Railroad, 146 Mo. 572. Plaintiff can not recover for negligence in speed of the train (even if the engineer were guilty of negligence), because such speed was directly under his control. Gorham v. Railroad, 113 Mo. 423. Plaintiff knew the conductor and rear brakeman were at the caboose and that the engineer was subject to his orders and wholly dependent upon him for guidance in the management of the train. He signalled an order to the engineer to back, and immediately placed himself out of the line of the engineer's vision. With his back

toward the engine, and without trying to ascertain whether the engineer could see him, he undertook to inform the engineer that a car was on the track three or four car-lengths from the rear of the train, when, in reality, it was nine or ten car-lengths away. Still carelessly oblivious of the fact that the engineer could not see him, he undertook to signal an order to run slow. He knew, or should have known, long before he reached the car that he had underestimated the distance and that if the train should stop after running only three or four car-lengths, it would still be five or six car-lengths away, and the coupling could not have been made. He knew that in order to enable him to make the coupling the train must not stop until after coming in contact with the standing car; he knew car-length signals were merely estimates of distance and not orders to stop; he knew the train had not stopped, because he heard the noise it made as it came towards him; he knew the engineer depended entirely upon him for orders for the management of the train, and could not know where he was. With all this knowledge, he did not once glance over his shoulder as he "trotted"· along to see where the train was, or how it was moving.

*Frank Hagerman* and *L. H. Waters* for respondent.

(1) If the proper signals were given to the engineer and the train came in on the house track at a dangerous rate of speed because of the defective brakes, then defendant was liable, if plaintiff was not negligent. Settle v. Railroad, 127 Mo. 341; Hurlburt v. Railroad, 130 Mo. 667; Bluedorn v. Railroad, 121 Mo. 268; Moberly v. Railroad, 98 Mo. 183; Henry v. Railroad, 109 Mo. 488; Huhn v. Railroad, 92 Mo. 450. Where the facts are before the jury the presumptions or inferences they warrant are questions purely for them. Ham v. Barrett, 28 Mo. 388; Bluedorn v. Railroad, 121 Mo. 270. It is a well-established rule that courts must accept

the most favorable inferences in support of the verdict which the evidence will authorize. Hooper v. Railroad, 8 Am. Neg. Rep. 454. If the brakes on the engine were so defective as to be useless and the train went in on the house track at a dangerous rate of speed, the jury was authorized to infer that the speed was attributable to such defects. The fireman testified that in his opinion the train went in as slow as he could hold it. Hurlburt v. Railroad, 130 Mo. 668. Causal connection between the defective condition of the brakes and the injury need not be shown by direct proof of the fact itself. It is sufficient if the facts proved are of such a nature and are so connected and related to each other that the conclusion therefrom may be fairly inferred. Settle v. Railroad, 127 Mo. 341; Wharton on Negligence, sec. 420. (2) If the engineer was guilty of negligence, as charged, in going in on the house-track at a dangerous rate of speed, considering the work to be done, then the defendant is liable under the Act of February 9, 1897. The jury found that the plaintiff gave the engineer every signal required, and had they been observed and obeyed, the injury could not have occurred. That the train was run in, regardless of all those signals, is not denied. He not only disregarded the signals but failed to recognize the fact that the brakes on his engine were useless and that he was running in on a down grade. After the signals were given the responsibility for the movement of the train was upon the engineer and he was in control of the speed of the train and charged with the duty of watching the movements of plaintiff. Railroad v. Conroy (U. S.), 7 Am. Neg. Rep. 198; Railroad v. Adams (Ky.), 51 S. W. 578; Railroad v. Earl's Admr., 94 Ky. 375. The jury might well have inferred from the evidence, that the dangerous rate of speed was the result of the negligence of the engineer. Settle v. Railroad, 127 Mo. 341; Wharton on Negligence, sec. 420. (3) Plaintiff had a right to assume that the engineer would obey the signals he had given to him, and that the train would

back in at a safe rate of speed. Such signals were in common use and well understood by the engineer. Sullivan v. Railroad, 117 Mo. 222; Kelley v. Railroad, 101 Mo. 67; Eswin v. Railroad, 96 Mo. 290; Petty v. Railroad, 88 Mo. 318; Johnson v. Railroad, 77 Mo. 546; Bluedorn v. Railroad, 121 Mo. 270. He had a right to presume that the engineer would get his train under control as it was his duty to do. Richards v. Railroad (Ky.), 49 S. W. 419; Hooper v. Railroad, 8 Am. Neg. Rep. 454. He was not guilty of negligence in running in advance of the train to set the pin, or to make the coupling. Richards v. Railroad (Ky.), 49 S. W. 419; Dysart v. Railroad, 145 Mo. 83. His duty took all his attention, and under the circumstances he was not required to see if the engineer was doing his duty. Plank v. Railroad, 60 N. Y. 607. The law presumes that plaintiff was in the exercise of ordinary care and properly performed his duty. Stepp v. Railroad, 85 Mo. 229; Petty v. Railroad, 88 Mo. 306; Schlereth v. Railroad, 96 Mo. 509; Bluedorn v. Railroad, 108 Mo. 448. The practice of the trainmen and the custom in making such couplings was a part of the mode of conducting defendant's work and it is presumed to have been sanctioned by defendant. In all plaintiff did, he acted in accordance with the practice and custom on that road. Rutledge v. Railroad, 123 Mo. 134.; Dewalt v. Railroad, 55 S. W. 534. The plaintiff was where his duties required him to be. The work required promptness and if he did it in the usual and customary way he was not negligent. Wharton on Negligence, sec. 210; Bluedorn v. Railroad, 108 Mo. 448; Greenleaf v. Railroad, 27 Iowa 47; Snow v. Railroad, 8 Allen (Mass.), 441; Goodfellow v. Railroad, 106 Mass. 461. The question is not whether the jury might have inferred negligence, but whether the court should have so declared as a matter of law. Bluedorn v. Railroad, 108 Mo. 448; Schroeder v. Railroad, 108 Mo. 322. It can not be said, as a matter of law, that plaintiff was negligent in keeping his eyes and attention upon the

business of his employer for a few seconds, or in going upon the track to set the coupling-pin, when, if the train had been running at a proper and safe rate of speed, upon which he had a right to rely after having given the signals, he might with safety have made the coupling. Unless he knew they were being disregarded, he was not guilty of negligence. Bluedorn v. Railroad, 121 Mo. 268; Sullivan v. Railroad, 117 Mo. 214. Plaintiff had a right to presume that the engineer would exercise due care. Filer v. Railroad, 59 N. Y. 357; Railroad v. Schultz, 64 Ill. 173; Steele v. Railroad, 43 Iowa 109; Schultz v. Railroad, 44 Wis. 638; Minor v. Sharon, 112 Mass. 477. He had a right to assume that the engineer would not disregard any duty imposed on him by any rule, custom or statute. Sullivan v. Railroad, 117 Mo. 221; Eswin v. Railroad, 96 Mo. 290; Kelley v. Railroad, 101 Mo. 67; Crumpley v. Railroad, 111 Mo. 158; O'Connor v. Railroad, 94 Mo. 150; Kenney v. Railroad, 105 Mo. 270; Petty v. Railroad, 88 Mo. 319; Johnson v. Railroad, 77 Mo. 546. It was for the jury to say whether he might not have reasonably anticipated that the engineer would come in at such a rate of speed that he might safely do what he was required to do. Francis v. Railroad, 127 Mo. 668; Burdict v. Railroad, 123 Mo. 230; Huhn v. Railroad, 92 Mo. 440; Railroad v. Adams, 6 Am. Neg. Rep. 524. Knowledge of danger is not always decisive of contributory negligence. O'Mellia v. Railroad, 115 Mo. 221; Stoddard v. Railroad, 65 Mo. 514; Francis v. Railroad, 127 Mo. 668; Manning v. Railroad, 108 Mo. 191; Barry v. Railroad, 98 Mo. 62; Tabler v. Railroad, 93 Mo. 79.

GANTT, J.—On the seventh or eighth of December, 1897, the plaintiff, then a young man, twenty-two years old, was employed by the defendant company as brakeman on a local freight train from Stanberry, Missouri, to Council Bluffs, Iowa. This train as indicated did the local work,

loading and unloading freight at the various stations and switched cars to and from the sidetracks at the way stations. On the twenty-second day of February, 1898, plaintiff was head brakeman on this local freight train, east bound from Council Bluffs to Stanberry.

When the train reached Burlington Junction, one mile west of Roseberry, the conductor told the plaintiff that there would be a car to take into the train at Roseberry, and plaintiff testified that he went to the engineer, Davidson, and told him they were to get the car at Roseberry. Chattin, the rear brakeman on the same train, also told plaintiff and saw him start immediately toward the engine. The fireman also knew the car was to be taken off of the house track, but could not remember who told him. The engineer, however, testified that plaintiff was not on his engine; that he did not see or know of the presence of the car and did not know a car was to be taken on at that station, and that the fireman did not tell him the car was four or five car-lengths behind the train after it stopped, as the fireman testified. Plaintiff testified that the car was in plain view, so that one interested in the work of the train could see and know which car was to be taken. The caboose was cut off at the station and the train stopped east of the switch on the main track, and on a signal from plaintiff backed on the house track.

There were three tracks at this station, the main track, the passing track and the house track. The house track was north of the main track, and the depot, watertank and toolhouse were also north of the main track, and the house track was north of these buildings. The car to be taken was standing on the house track near the toolhouse, three hundred and seven feet west of the switch.

The engine was headed east and the engineer was leaning out of his cab window, looking back for signals from plaintiff for the management of the train. The engineer admitted he received the signal to back, but denies that he received the

signals indicating the car was four or five lengths, or that the fireman so told him, and says he did not see the car on the house track.    There was considerable down grade on these tracks to the west.

When the train had passed the switch connecting the main track and house track, the engineer stopped the train, the plaintiff threw the switch, and signaled the engineer to back down, and then ran ahead to make the coupling, and when near the car to be taken, stepped on the track to set the pin on the standing car, but at that moment noticed the train was dangerously near, and was not slacking its speed, he attempted to step out but was struck by the backing train and both of his legs were crushed so as to require their amputation.

It appeared in evidence that there were no brake-shoes on the engine, thus rendering the engine brakes useless. Plaintiff did not know this, but the engineer testified that the brake-shoes had been off for about a week; that he had previously reported that fact to his superiors, and that the brakes were useless without the shoes.    Summers, the fireman, also testified that there were no brake-shoes on the engine on the trip before this.    He further testified that the train was coming back "pretty fast" for that coupling.    Chattin, the rear brakeman, testified that he saw the train was coming too fast; that plaintiff was in danger, and he called to him to get out of the way.    Notwithstanding the testimony of the engineer that he didn't know that he was to take the car into his train at Roseberry, there was positive testimony that he was advised that it must be taken, and that the fireman told him the car was four or five lengths back, and this testimony is corroborated by the leaving of the caboose at the depot, and the stopping of the train at the switch, and the signals to back on the house track.    It is certainly significant that the engineer, of all the crew, did not learn this car was to be taken, and did not grasp the purpose of all these movements at the time, all

happening in broad daylight at three o'clock in the afternoon.

The evidence further disclosed that there were three kinds of signals, in universal use, for a situation like that; one, to back the train; one, showing the distance of the car to be coupled from the rear end of the train; and one, to slow up. Plaintiff testified he gave the signal to back the train, and followed it with a signal that the car was three or four lengths behind; and then started, and as he went, signaled the engineer to slow up. When these signals were given the engineer was sitting on the right-hand side of the engine with his head out of the window, looking back for signals from plaintiff. Plaintiff gave the three signals in their order when he was near the switch. The engineer says he got the signal to back up, but did not see the others. Chattin, the rear brakeman, testified he saw plaintiff give the car-length signal. The engineer says it was his duty to keep his eye down the track and watch for signals. He further says it would have been proper for plaintiff to have given the car-length signal at the switch as plaintiff says he did, and that if he had seen the signals he could have regulated the speed of the train so as to stop at the proper place.

The train came back at a rate of about four miles an hour. The engineer testified that a coupling could be safely made when the train was going two or three miles an hour; that he was in fact, going four miles an hour, down grade, with defective brakes; that while a coupling could be made while going four miles an hour, "it would be better going slower." Plaintiff ran to make the switch at the rate of four or five miles an hour, but the train in a distance of three hundred feet overtook him, and it was a fair inference to find the train was running as fast or faster than plaintiff, and in excess of the reasonable speed for making a coupling.

Other material facts may be stated in the course of the opinion.

The jury, under the instructions of the court, rendered a

verdict for plaintiff and assessed his damages at $15,000. Defendant appeals.

The errors assigned are as follows:

First, refusal to sustain defendant's objection to any testimony under the allegations of the petition.

'Second, the giving of plaintiff's instruction numbered one.

Third, overruling motions for new trial and in arrest.

Fourth, refusal to sustain a demurrer to the evidence.

I. The first proposition is that the petition on its face stated plaintiff out of court. In support of this general proposition, counsel for defendant specify that the petition fails to state any facts showing a negligent failure to see the signals which the petition alleges plaintiff gave the engineer; that on its face it shows a reckless disregard of his own safety; that he placed himself in danger without taking precautions to know whether his signals had been seen or his orders obeyed. We think the objection was properly overruled. Plaintiff averred his employment on the train as brakeman; the orders to take a car from the house track and put it into the train; that when the train had passed the switch, plaintiff threw the switch and gave said engineer a signal to back, and also then and there gave said engineer signals informing him how many car-lengths he should back, and afterwards gave him the signal *to slow down*. He observed the law of good pleading by stating the fact that *he gave the engineer the signals*. It was not necessary he should plead his evidence or to state how he knew or did not know the engineer saw the signals. The petition distinctly charged that the engineer negligently failed to observe the signals. His case was bottomed on the theory that the engineer did see the signals.

Nor does his petition disclose contributory negligence on his part. It averred his giving of the signals, the performance of his duty as brakeman, the negligence of the engineer in backing the train on him so rapidly and at such a rapid and

unsafe rate of speed that he could not safely make the coupling, his discovery of his danger caused by the engineer's negligence, his attempt to escape, and that the train caught him and crushed both legs. The petition stated a good cause of action, and the burden of showing contributory negligence was on defendant.

The motion in arrest was properly overruled, for the same reason. The objection that the petition disclosed that the negligence, if any, was that of a fellow-servant, was the foreshadowing of the assault upon the constitutionality of the Act of February 9, 1897, rendering railroads liable to their servants for the negligence of their fellow-servants, which this court In Banc, in Powell v. Sherwood, has sustained. [162 Mo. 605.]

Plaintiff's first instruction is assailed on a multitude of grounds, but chiefly on the ground that it permitted a recovery regardless of whether the engineer saw the signals given by plaintiff, and ignored plaintiff's negligence, in not knowing his signals, were seen. This is a strained interpretation of the language of the instruction, which required the jury to find that plaintiff *gave the engineer the signals* as the predicate of his failure to obey them. By "giving the signal to the engineer" the jury, as every one else, understood, he communicated to the engineer the orders to move, and the words as used necessarily implied that the engineer saw the signals, and when in the seventh instruction, the court told the jury that "although the jury might believe plaintiff gave all the signals testified to by him, yet if they further believed that on account of the position and location of the plaintiff at the time the signals were given, *the engineer could not and did not see the said signal* to slow up, then plaintiff could not recover," it is absolutely certain that the court understood, as did the jury, that when the court used the words "gave the engineer the signals," it meant of course that the engineer saw them, or by the exercise of ordinary care was bound to see them, and un-

less he did, the plaintiff could not recover. This is apparent by the other clause in the instruction, which told the jury, that if the engineer negligently failed to observe and obey the signal and *negligently caused his train to run a greater distance than he was informed by said signals it was necessary to reach said car,* etc. Here the idea of information received is made prominent, and the whole instruction is based upon the fact that the signals were *communicated* to the engineer.

The instruction is not fairly open to the criticism made that it did not require the engineer to see the signals, especially since the court told the jury that if by reason of the situation he couldn't see them, then he was not negligent in not obeying them, and the defendant was not liable. Neither was there any conflict in the two. They were entirely consistent. The jury, to find for plaintiff, were bound to find the engineer saw the signals, or by his conduct led plaintiff to believe he saw them, and to act upon that assumption, before they could find for plaintiff, and on the other hand, if they found he didn't see the signals owing to the curve in the track, and plaintiff's location when he gave them, then, the engineer was not guilty of negligence in not obeying them, nor is there anything in the instruction which allowed a recovery if the engineer carefully moved his train so that it could be coupled while in motion.

It was a conceded fact that if the train had been moving at a rate of a mile or two an hour, the coupling could have been safely made. The second part of this instruction is practically another instruction, and it authorized the jury to find for the plaintiff "if the jury shall believe from the evidence that said train came in upon said side track at a dangerous and rapid rate of speed because of the defects in the brakes of said engine, if they were so defective as aforesaid, and because said brakes, in their said defective condition, if they were so defective as aforesaid, were insufficient to control and regulate the rate of speed of said train, and engine, and that plaintiff,

while in the discharge of his duties as aforesaid, and without fault on his part, was struck and injured by said train as aforesaid; and if the jury believe from the evidence that the defendant and said engineer then and there knew that there were no brake-shoes on the brakes of said engine, and that said brakes for that reason were defective and insufficient to control and regulate the speed of said train in time to have repaired the same and prevented said injury, and that plaintiff did not know that said brakes were defective, or insufficient, as aforesaid, if they were defective or insufficient as aforesaid, then the plaintiff is entitled to recover."

Counsel for defendant insists this instruction, or this part of instruction numbered one for plaintiff, was error because they say there was no causal connection between the absence of the brake-shoes from the engine and the injury to plaintiff. As a basis for this argument they assume that the evidence established that the brakes on the engine were sufficient to control its motion without shoes, and that it puts upon the engineer the burden of "repairing the engine." This part of this instruction must of course be considered in connection with that which preceded it, that is, if the proper signals had been communicated to the engineer, and in obeying them he had run his engine in on the house track at a dangerous speed because of the want of brake-shoes on his engine, then defendant was liable for the injury, if plaintiff's own negligence was not the proximate cause of the injury.

There was a complete concurrence in the testimony that the brake-shoes were not on the engine; that they had been off for about a week; that the engineer had notified his superiors of their absence, twice; that the brake on the engine was useless without brake-shoes or driver-shoes, as they are sometimes called; that for a safe coupling the train ought not to move faster than two or three miles an hour, and this train was backing at four or more miles an hour; the train was going down grade, and the fireman testified he (the engineer)

was coming back "as slow as he could hold it." The evidence further showed that all engines are equipped with these brake-shoes. It is certainly true that in order to permit a recovery on account of the negligence of the defendant in failing to have the engine equipped with brake-shoes after it had been twice notified by the engineer in charge, such negligence must have been shown to have been the cause, or a contributory cause of plaintiff's injury, but it has been ruled that it is not necessary that this should be shown by direct proof.

It is sufficient if the facts proved are of such a nature, and are so connected and related to each other, that the conclusion therefrom may be fairly inferred. Settle v. Ry. Co., 127 Mo. 341.

In view of the clearly established fact that the engine had no driver or brake-shoes; that this fact had been twice reported by the engineer in charge of it to the company; that it was a recognized essential of a well-equipped engine, and that without them the brakes on the engine are useless, and the evidence of the fireman elicited by defendant that the engineer was coming back *"as slow as he could hold it,"* we think the jury were justified in drawing the inference that but for the negligence of the company in failing to provide the brake-shoes, the engineer could and would have run slower, as all the evidence shows should have been done to make the coupling safe for the brakeman, the plaintiff in this case. [Hurlbut v. Ry. Co., 130 Mo. loc. cit. 668.]

Where the facts are before the jury, the presumptions or inferences they warrant are for the jury. [Ham v. Barret, 28 Mo. 388; Bluedorn v. Ry. Co., 121 Mo. 270.]

Nor were the jury bound to accept the engineer's version of the accident. He was flatly contradicted by his fireman and plaintiff as to his knowledge that the train was to take in the car at Roseberry, and as to the distance he had to run, and as to his seeing the signals, and they saw and heard Summers, the fireman, testify, and had a right to credit his testi-

mony that owing to the absence of the brake-shoes the train could not be run slower down the grade, and if they so found, the injury was directly traceable to the negligence of defendant in not furnishing a reasonably safe engine to do the work of the train, or they might have found that the engineer knew he had an engine he could not hold without the shoe-brakes, and yet went on the switch at too rapid a speed to make the coupling safely, and the negligence of both contributed to the injury of plaintiff. At any rate, the evidence was before the jury, and the instruction was properly predicated on it.

It may be the jury attributed the injury entirely to the carelessness of the engineer in sending his train back at a dangerous speed for the coupling in disregard of the signals.

But it is said that plaintiff was guilty of contributory negligence. The record discloses that he notified the engineer that the car was to be taken into the train; that he alighted and threw his switch, gave the proper signal to back down, and then at or near the switch, the place at which the engineer says he ought to have given the car-length signal, he gave the car-length signals, and ran alongside the train till he reached the stationary car; that he set the pin according to the universal custom, and then discovered what the rear brakeman also discovered, that the train was coming back so rapidly that he could not make the coupling and then vainly endeavored to extricate himself from the peril in which the negligence of the engineer and the company had placed him, but was caught and both legs crushed. It is said the plaintiff ought not to have gone on the track between moving cars, ignoring that his duty called him to act rapidly, and that he had given the signals which required the train to be running very slow when it reached the stationary car, and that he had a right, after looking directly at the engineer who was hanging out of his cab window to receive the signals and giving him the distance to come back and in addition the slow down signal, to believe the

engineer would obey the signals.

In Beems v. R. R. Co., 58 Iowa 150, the Supreme Court said: "It would be a strange doctrine to hold that defendant could back its trains with unusual speed, without obeying signals to move more slowly, and thus negligently run over a brakeman, and would not be liable, for the reason that the unfortunate man was fastened to the spot by his foot being held between the rails. Whatever was the intestate's condition at the time of the accident, whether free to move or fastened to the place, the defendant is liable if its cars were negligently driven over him."

In the same case it was urged that the brakeman was guilty of contributory negligence because he attempted to uncouple the cars after he had given the signal to run slowly, and to this contention the court responded: "His signal was not obeyed. He was authorized to believe that the motion of the car would be checked, and he was not required to wait, before acting, to discover whether obedience would be given to his signal. The jury could have found that after the signal had been given, and after he had gone between the cars, if their speed had been checked, he would not have been exposed to danger. His act, therefore, in going between the cars after having made the signal to check their speed, *was not necessarily contributory negligence.*"

That cause was much stronger than this against the plaintiff. Here the evidence showed there was no rigid rule for making the coupling and the facts show he had proceeded in the customary way and only discovered the train was moving too rapidly when he endeavored at once but too late to escape. Whether he was guilty of contributory negligence was a question of fact which was submitted to the jury under the most favorable instruction for defendant, and the jury found he was not.

No court, under the facts in evidence, could declare his conduct contributory negligence as a matter of law, and take

the case from the jury.   In measuring plaintiff's conduct in the premises we are not to lose sight of the perilous nature of his employment; that his duties require his whole attention. His hands and eyes were both engaged in making the coupling, and it is not placing too great a burden on the engineer to require him to observe and obey the signals which if obeyed will preserve the lives and limbs of brakemen.   We are clear that the court did not err in refusing to hold plaintiff guilty of contributory negligence under the evidence in the case.

The evidence established that plaintiff was a young man twenty-two years of age, about six feet high.   By this injury he lost both legs, and has been left a hopeless cripple for life, besides undergoing the most terrible suffering.   No point is made in brief, or argument, that the damages, considering his expectancy of life, are excessive.   While they are large we can not say they are the result of passion or prejudice.

The judgment must be and is affirmed.   *Burgess, C. J., Robinson, Brace, Marshall* and *Valliant, JJ.,* concur in toto. *Sherwood, J.,* concurs, but is in doubt as to the constitutionality of the Act of February 9, 1897, referred to in the opinion.