PERRY W. SANDERS, Respondent, v. QUERCUS LUMBER COMPANY, (a corporation), Appellant.

Springfield Court of Appeals, January 30, 1915.

1. **MASTER AND SERVANT: Guarding Machinery: Statutory Requirements: What Within.** A sawmill ninety feet long and eighteen feet wide, running sixteen months after the date of the injuries sued for, is within the purview of the statute requiring shafting in "all manufacturing, mechanical and other establishments" to be securely guarded when so placed as to be dangerous to persons employed around such establishment (Sec. 7828, R. S. 1909), and the contention that such a mill was a mere shifting contrivance is not tenable.

2. ——: ——: ——: **Case Covered by.** Though a sawmill ninety feet long and eighteen feet wide was not permanently completed as to all its buildings but the machinery was permanently located, the mill is within the intent of Sec. 7828, R. S. 1909, requiring the shafting to be guarded.

3. **APPEAL AND ERROR: Finding of Jury: When Final.** The finding of a jury on disputed facts is not disturbed on appeal.

4. **DAMAGES: Excessive Verdict: Remittitur.** Nature and extent of injuries received by servant in master's sawmill reviewed and considered. A verdict for $7500 *held* excessive. Remittitur of $2500 ordered. [Per STURGIS and FARRINGTON, JJ., ROBERTSON, P. J., dissenting.]

5. **COURTS: Supreme Court Decisions: Binding on Appellate Courts.** The decisions of the Supreme Court on the method of determining, and as to what is and what is not an excessive verdict in personal injury cases, are binding on the courts of appeals.

Appeal from Butler County Circuit Court.—*Hon. J. P. Foard*, Judge.

AFFIRMED (*on condition*).

*M. U. Hayden* and *Sheppard, Green & Sheppard* for appellant.

(1) In an action founded upon an alleged violation of Section 7828, R. S. 1909, commonly referred to as the ''Factory Act,'' the burden is upon a plaintiff to both allege and prove the following facts: (a) That the place in which plaintiff was injured was a ''manufacturing, mechanical, or other establishment.'' (b) That the belting, shafting, gearing, or machinery by which the plaintiff was injured was so placed as to be dangerous to plaintiff while engaged in his ordinary duties. (c) That, at the time of his injury, the plaintiff was engaged in the performance of one or more of his ordinary duties. (d) That the alleged dangerous agency was not, at the time, guarded, and that it was either possible to have guarded same, or if it was not possible to so guard same, that notice of its dangerous character was posted in the establishment. Strode v. Columbia Box Co., 124 Mo. App. 511; Lang v. Bolt and Nut Co., 131 Mo. App. 146; Huss v. Heydt Bakery Co., 210 Mo. 44; Meiffert v. Sand Co., 124 Mo. App. 491; Miniea v. St. Louis Cooperage Co., 175 Mo. App. 91, 157 S. W. 1006; Millsap v. Beggs, 122 Mo. App. 1; Simpson v. Witte Iron Works, 249 Mo. 376, 155 S. W. 810; Roundtree v. Cement Co., 156 Mo. App. 679, 137 S. W. 1012; Phillips v. Shoe Co., 165 S. W. 1183, l. c. 1190; Saling v. American Chicle Co., 166 S. W. 823; Ward v. City of Norton, 86 Kan. 906, 122 Pac. 881; Foster v. Paper Co., 71 N. Y. App. Div. 47; Ingram v. Cowles, 150 Mass. 155. (2) The question whether or not all of the elements requisite to constitute a violation of this statute exist may properly become one of law for the court. Meiffert v. Sand Co., 124 Mo. App. 491; Strode v. Box Co., 124 Mo. App.

511. (3) The defense of contributory negligence may properly be interposed in an action based upon the alleged violation of this statute. Colliott v. American Mfg. Co., 71 Mo. App. 170; Smith v. Box Co., 193 Mo. 715; Saling v. American Chicle Co., 166 S. W. 823; Huss v. Heydt Bakery Co., 210 Mo. 44; Simpson v. Witte Iron Works, 249 Mo. 376, 155 S. W. 810; Phillips v. Shoe Co., 165 S. W. 1183; Austin v. Shoe Co., 176 Mo. App. 546, 158 S. W. 709; Stafford v. Adams, 113 Mo. App. 717; Morgan v. Hinge Co., 120 Mo. App. 590; Millsap v. Beggs, 122 Mo. App. 1; Miniea v. Cooperage Co., 175 Mo. App. 91, 157 S. W. 1006. (4) The verdict is excessive. Chlanda v. Transit Co., 213 Mo. 244, 112 S. W. 249; Phillips v. Shoe Co., 165 S. W. 1183; Trent v. Printing Co., 141 Mo. App. 437; Dean v. Railroad, 229 Mo. 425; Partello v. Railroad 217 Mo. 645; Lessenden v. Railroad, 238 Mo. 249; Domineck v. Western Coal & Mining Co., 164 S. W. 567; Devoy v. Transit Co., 192 Mo. 197; Nichols v. Glass Co., 126 Mo. 55; Brady v. Railroad, 206 Mo. 509.

*David W. Hill* for respondent.

(1) Sec. 7828, R. S. 1909 is not a penal statute and should receive a liberal construction. Lore v. Amer. Manf'g Co., 160 Mo. 621; Strode v. Columbus Box Co., 250 695, 704-5. (2) A sawmill is a manufacturing establishment because it manufactures lumber from logs. It falls within the purview of Sec. 7828, R. S. 1909. Bogard v. Tyler, 55 S. W. 709-905; Rabe v. Consoldated Ice Co., 113 Fed. 905; Carlin v. Western Assurance Co., 57 Md. 515; Lamborn v. Bell, 18 Colo. 346; Memphis Gas Light Co. v. State, 6 Coldw. (Tenn.) 310; Franklin Meedle Co. v. Franklin, 65 N. H. 177; 26 Vol. Cyc. 530-531-532. ((3) The verdict is not excessive. Henderson v. Kansas City, 177 Mo. 492; Latson v. Transit Co., 192 Mo. 449; Smith v. Fordyce, 190 Mo. 1; Davenport v. King Electric Co., 242 Mo. 111; Campbell v. United Railways Co., 243 Mo. 141; Black v. Rail-

road, 172 Mo. 177; Fullerton v. Fordyce, 144 Mo. 519; Clark v. Railroad, 127 Mo. 197; Furnish v. Railroad, 102 Mo. 438; Cobb v. Railroad, 149 Mo. 609; Malloy v. Railroad, 173 Mo. 75; Longan v. Weltmer, 180 Mo. 322; Copeland v. Railroad, 175 Mo. 605.

ROBERTSON, P. J.—Plaintiff recovered a judgment for $7500 on account of personal injuries and defendant has appealed. The plaintiff, about thirty years of age, was in December, 1912, working for the defendant in Butler county. At the time the defendant owned two sawmills designated as number 4 and number 3. They were three-fourths of a mile apart. On the 17th day of that month the plaintiff went from mill number 4 to mill number 3, at which latter place he was working at firing the boiler and looking after the engine and in doing this it necessitated repeated trips to be made between the engine and boiler and in order to do this it was necessary to pass over a two inch line shaft about eighteen inches above the ground. On this line shaft was a collar of a belt pulley that had been broken leaving some of the broken spokes of the wheel thereon, and there was also a set screw on the shaft, all unguarded. Number 3 mill had a short time prior to the accident been constructed and a floor placed in a portion of it which if it had been extended would have completely covered this line shaft. The mill had been sawing and piling up lumber for something like a month before the accident. The plaintiff was passing from the engine to the boiler and over this line shaft when the old collar, or the set screw, caught in his clothing, taking him around with the shaft ten or twelve revolutions, hitting him against the ground, tearing his clothing off of him about the middle of his body, rendering him unconscious, permanently injuring one of his ankles, almost destroying the hearing in one of his ears and causing injuries which affected his memory.

This action is based on section 7828, Revised Statutes 1909, requiring shafting in all manufacturing, mechanical and other establishments when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties to be safe and securely guarded when possible.

The defendant now contends that its mill number 3, was a mere shifting contrivance that is temporarily located in the woods to work up a small part of the there available saw timber and then to be shifted to another place for the same purpose, and that, therefore, it does not come within the scope and intent of the statute. This contention cannot be upheld because the defendant's only witness testified that the mill was about ninety feet long and about eighteen feet wide and that it was running on the date of the trial, sixteen months after the accident to plaintiff.

The defendant contended at the trial and now argues here that mill number 3 was not completed and a going concern so as to come within the provisions of that law, but the testimony in behalf of plaintiff was to the effect that the mill had been producing and piling up lumber for sometime prior to the accident. The machinery was permanently located. The defendant offered only one witness, its theretofore sawyer, who testified that the buildings of the mill proper had not been completed at the time of the accident and that the only thing it had been run for was in cutting for building purposes and that if the floor had been completed the shaft would have been under it. This is not similar to the case of Foster v. International Paper Co., 71 N. Y. App. Div. 47, cited and relied on by the appellant here, where the construction on the shaft was in progress when the accident occurred. Defendant's witness did not testify that when the work on the construction of the mill is completed that the floor will be extended over this shaft. The defendant did not undertake to prove that it intended to extend the floor over this

shaft. A witness for plaintiff testified that the shaft could have easily been protected. We hold that upon these facts defendant comes within the purview of the statute.

While it is not necessary for us to go to that extent it may be said that if the defendant was cutting material with this mill for its completion, the shaft being permanently located, that then it was engaged in manufacturing within the meaning of the statute where so dangerous a shaft as the one here in question, could have been protected with so little trouble and expense. The statute is remedial and highly salutary (Cole v. North American Lead Co., 240 Mo. 397, 407, 144 S. W. 855, and Strode v. Columbia Box Co., 250 Mo. 695, 704, 158 S. W. 22) and it appears that there is good reason for holding that when a manufacturing establishment is operating its plant in the same manner in which it would run it after completion for commercial purposes that under the circumstance here disclosed it should have protected the shaft that caused the injury.

Again it is contended by defendant that the plaintiff was not engaged in his ordinary duties when injured but the testimony is conflicting upon that point and the jury has resolved it in favor of the plaintiff, hence this point is ruled against defendant.

It is said the judgment should be reversed and the cause remanded for the reason that the verdict is so excessive as to be evidently the result of passion and prejudice. The above reference to the injuries of the plaintiff are sufficient, in my opinion, to justify the amount of the verdict, and especially since the trial court, who saw plaintiff and heard him testify, has refused to disturb it.

Numerous other questions are raised, such as contributory negligence and alleged improper remarks of counsel for respondent in his argument to the jury but all of these questions have been considered and found

to be so lacking of merit as to justify no further comment thereon.

The judgment is affirmed in the event plaintiff remits according to the order contained in the concurring opinion filed herewith, otherwise it will be reversed and the cause remanded.

*Farrington* and *Sturgis, JJ.,* concur in a separate opinion filed.

STURGIS and FARRINGTON, JJ.—We are convinced that the point made by appellant that the verdict, $7500, is excessive is well taken. It insists that the verdict is so grossly excessive as to indicate such passion and prejudice as, taken in connection with some irregularities mentioned, necessitates the granting of a new trial under the rule announced in Neff v. City of Cameron, 213 Mo. 350, 111 S. W. 1139, and Phillips v. Shoe Co., 178 Mo. App. 196, 165 S. W. 1183. To this we do not agree and think the error can be cured by a proper remittitur.

That plaintiff received very severe injuries and suffered much pain we do not deny. That such injuries are to some extent permanent we also agree. The suit was not commenced until more than a year after the injury, so that at the time of the trial the nature and extent of the injury could be determined with some degree of certainty. There were no bones broken or fractured. The permanent injuries shown by the evidence are confined to a sprained and dislocated ankle and impairment of the hearing and memory. The other injuries, though severe and painful at the time, have largely, if not entirely, passed away. The hearing is only impaired, more in one ear than in the other, and plaintiff could only hear a watch tick faintly an inch from one ear. He seems to have heard and answered all the questions at the trial with little difficulty and it is not contended that he could not hear and carry on

conversations fairly well. His hearing has been improving rather than getting worse. The same is true of his memory. The evidence is not at all conclusive that this is permanently impaired. The tests in that respect seem to have been largely confined to the circumstances attending his injury and, as he was caught so suddenly and rendered unconscious for sometime, this is not very strange. He gave a very good and intelligent account of the same at the trial. The physicians testified that his memory is much improved. He was confined to his bed for two weeks and lost three months time. His ankle has so far recovered that there is no swelling or external indications of the injury. It is weaker than the other, is tender, more susceptible to further injury and the flexion and extension are limited. This injury is also getting better rather than worse. After plaintiff recovered so far as to be able to work, he worked for a month or so in a store, then later had been working in the woods cutting and hauling logs and such was his occupation at the time of the trial. He says that he is not able to work all the time and suffers more or less while doing any work. His wages at this work are $1.25 to $1.50 per day and not so large as when he was injured, as he then received $3 per day. That, however, may be owing to the kind of work he is doing rather than impaired capacity. The evidence is meager on this point, as it is in fact as to all his injuries *at the time of the trial.* The plaintiff was married after his injury and some months before the trial. He was thirty years of age. The fact that plaintiff was caught and wrapped around the line-shaft, performing several revolutions striking the ground each time, was made unconscious, bruised, lacerated, his clothes torn partially off, etc., is pressed on us with great force. We have given this due consideration. That plaintiff passed near the valley and shadow of death and narrowly escaped with his life is true and his pain of body and mind is to be given due weight.

But that such facts cannot take the place of permanent injuries in justifying so large a verdict we think is abundantly established.

The decisions of the Supreme Court on the method of determining, and as to what is and is not an excessive verdict in personal injury cases, are as binding on us as are such decisions on any other question of law. On this point the Supreme Court, in Neff v. City of Cameron, 213 Mo. l. c. 366, 111 S. W. 1139, uses this language: "Our statutes put a modest and conservative limit on liability for a death loss; and, whatever may be the rule in other jurisdictions, this court has always deemed it of the gravest concern that damages should be kept within fairly conservative bounds in personal injury cases. Full compensation for injuries received through negligence is impossible, in the abstract. The best courts can do is to see to it that results attained do not shock the judicial conscience. Justice to the plaintiff must be tempered with—nay, means—*justice* to defendant as well." The court was there speaking of a verdict some larger than this, but the injuries were so very much greater that the court could only say that the evidence in that case did not certainly show that the injuries will "*entirely* destroy her earning capacity when she becomes an adult." In that case, as in this one, the court noted that the plaintiff recovered the total amount sued for and the largest possible amount allowed by the instructions and said that the jury might have concluded that as the instructions mentioned that amount it was an intimation by the court that such amount would not be too much.

In Lessenden v. Railroad, 238 Mo. l. c. 266, 142 S. W. 332, the court, after noting that there is no certain method of ascertaining the amount of damages to be awarded as compensation for personal injuries and that much must and should be left to the honest discretion of the jury, then said: "It will not do to say, Put yourself in the sufferer's place, for you cannot do

that, nor can it be asked for what amount you would be willing to suffer the same loss, for you would not be willing to endure the same for any amount; yet the law calls for fair compensation and the jury must decide the question as best they can. And the question must be decided not only with the purpose of rendering justice to the plaintiff, but justice to the defendant also. In the absence of any fact that would justify punitive damages, the award should be only *fair compensation* for the injury suffered.'' See also Newcomb v. Railroad, 182 Mo. 687, 81 S. W. 1069. In the Lessenden case, supra, the court fixed $15000 as the largest amount allowable where plaintiff's legs had been so crushed and mangled that *both* of them had to be amputated, one above and the other below the knee. The plaintiff was a more skilled workman and received larger wages than in the present case. We can certainly say that the loss of a second leg, or eye, or ear, is a greater loss than the first one; though here the injury is not that of a lost leg or foot. To the same effect is Cambron v. Railroad, 165 Mo. 543, 561, 65 S. W. 745.

In Perrette v. City of Kansas City, 162 Mo. 238, 62 S. W. 448, the plaintiff's injuries are thus described: ''His foot was caught in the hole, and he was thrown down upon the walk, his leg broken, the ligaments of his foot and ankle sprained and lacerated, and the bones of his foot and ankle dislocated. Bandages and splints were first applied, the swelling being so great that a plaster of Paris cast could not be put on. The inflammation around the injured parts became so great in a few days that gangrene set in and plaintiff was compelled to keep his foot in ice water four or five days, during which time he suffered intense pain, and was unable to secure any sleep except under the influence of opiates. A plaster of Paris cast was afterwards applied, which remained on about forty days,

and plaintiff was altogether confined to his bed ninety days, suffering constant pain and inability to sleep . . . his average earnings had been about twenty-one dollars a week. From the time of his injury up to the time of the trial, nearly fourteen months, he had not been able to make anything, as the condition of his foot and ankle had been such that he could not stand, and in working at his trade it was necessary for him to stand on his feet. The reason of this result seems to have been, according to the testimony of the physicians, largely due to the tearing loose of the ligaments and to the displacing of the heel bone where it unites with the bones of the foot. This had caused the axis of the foot and ankle to become perverted, the ankle to give way or turn out, and the arch of the foot to be destroyed, making the foot a 'flat-foot.' According to the testimony of the three physicians who treated and examined the plaintiff this condition was a permanent one." The verdict was for $5000 and the court pronounced it "large" and with hesitation allowed it to stand as not "so out of line with reason and justice as to shock the conscience." See also what is said of a verdict for $5000, where both legs were broken and both permanently injured, in Pauck v. St. Louis Dressed Beef & Provision Co., 166 Mo. l. c. 645, 66 S. W. 1070.

In Nicholds v. Plate Glass Co., 126 Mo. l. c. 68, 28 S. W. 991, at the first trial plaintiff was allowed $15000. In a second trial he recovered $8666. The bones of his ankle were broken; he used crutches five or six months and then an apparatus consisting of iron braces and a cork bottomed shoe; he lost seven or eight months time and was earning $75 to $90 per month at the time of the accident. The evidence showed that one of the bones was thickened. Only the half sole of one foot rested on the floor; the strength of the leg was impaired and the evidence indicated the injury was permanent. The Supreme Court cut the judgment down to $5000.

In Stolze v. Transit Co., 188 Mo. 581, 87 S. W. 517, the plaintiff was eighteen years of age at the time of the accident; was earning $3 a week and board and washing; was eleven months in the hospital; medical and surgical services were $500; his right leg had an open compound fracture and on his left leg he suffered a compound comminuted fracture. In the left leg the bones protruded through the skin; his pains, keen and agonizing, continued for several months; his left leg is shorter than the other; his ankle was anchylosed; the bones are still coming out; the injuries were permanent; the right leg entirely recovered. The judgment was for $15000 and it was reduced by the Supreme Court to $8000.

In O'Connell v. Railway Co., 106 Mo. 482, 17 S. W. 494, the plaintiff, a laborer earning $1.75 to $2.50 per day, received a fracture of the hip bone, causing permanent injuries, so that at the trial two years later he yet had to walk on crutches and would always be lame. He spent two months at a hospital on account of the injuries. He recovered $10,000, which the trial court caused to be reduced to $5000. This the Supreme Court approved as not being so large as to warrant further interference.

Guided by these principles and precedents, we think that $5000 is all that can be allowed to this plaintiff. This court has been very slow to interfere with the verdicts of juries as being excessive, but if we are to do so at all, and such is clearly our duty, then we should do so in this case.

If the plaintiff will within ten days remit $2500 of the verdict, a judgment will be entered here for $5000 as of the date of the original judgment and with interest from that date. Otherwise the cause will be reversed and remanded.