LONGREE, by His Next Friend, Respondent, v. JACKES-EVANS MANUFACTURING COMPANY, Appellant.

St. Louis Court of Appeals, October 30, 1906.

1. **MASTER AND SERVANT: Safe Appliances: Negligence: Assumption of Risk.** A servant does not assume the risk of injury caused by the negligence of the master in failing to provide reasonably safe appliances with which the servant is to work.

2. ———: ———: ———: **Prima Facie Case.** Where an employee in a manufacturing establishment was put to work moving a truck loaded with material over a floor which was rough with many holes in it, the truck being top heavy and liable to fall when moved over such floor, in an action for injuries caused by the falling of the truck upon the plaintiff, the evidence is examined and held sufficient to submit to the jury the question whether the defendant was negligent in failing to furnish the plaintiff with reasonably safe appliances and a reasonably safe place to work; that is to say, it was for the jury to infer whether it was reasonably safe to use the truck constructed as it was upon the floor in the condition it was.

3. ———: ———: ———: ———. In such case, the jury might infer that the truck was overturned by one of its castors running in a knot hole, although no witness saw it do so; juries must often draw an inference that the main fact in issue existed, from collateral facts not directly proving, but tending to prove its existence.

4. ———: ———: ———: **Instruction.** An instruction which authorized the jury to find for plaintiff if there was danger in the use of the truck without finding the degree of danger or that it was not reasonably safe, was erroneous.

5. ———: **Contributory Negligence: Minors.** In an action against his employer by a boy fifteen years old for damages on account of personal injuries, where it was shown that the boy had had a year's experience in the work in which he was engaged, it was error to instruct the jury that due care on the part of the plaintiff did not require the judgment and thoughtfulness of an adult person under the same circumstances; the instruction should have been that he was only required to exercise that degree of care which under like circumstances would reasonably be expected of one of his years and capacity.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

REVERSED AND REMANDED.

*Wise & McNulty* and *Seddon & Holland* for appellant.

(1) The court erred in refusing to give the peremptory instruction asked by appellant at the close of all the evidence. (a) This instruction should have been given, as there was no evidence in the case showing, or tending to show, that the injuries complained of by respondent were due to any of the acts of negligence alleged in respondent's petition. Chrismer v. Telephone Co., 92 S. W. 378. (b) Because definite proof is required to sustain a case, and the jury cannot base a verdict upon mere conjecture. Epperson v. Postal Telegraph Co., 155 Mo. 446; Warner v. Railroad, 178 Mo. 125; Knorpp v. Wagner, 93 S. W. 961, 969; Breen v. Cooperage Co., 50 Mo. App. 203; Fuchs v. St. Louis, 167 Mo. 620, 635; Bailey on Master and Servant, pars. 1659,

1660; Sorrenson v. Paper & P. Co., 56 Wis. 338; Smith v. Bank, 99 Mass. 605; Searles v. Railroad, 101 N. Y. 661; Taylor v. Yonkers, 105 N. Y. 202; Pierce v. Kile, 26 C. C. G. 201. (c) This instruction should have been given because the testimony clearly discloses a case of assumed risk. Lee v. Railroad, 112 Mo. App. 372; Mathias v. Stockyards, 84 S. W. 66; Holloran v. Foundry Co., 133 Mo. 470; Fugler v. Bothe, 117 Mo. 175; Steinhauser v. Spraul, 127 Mo. 541; Devitt v. Railroad, 50 Mo. 302; Cagney v. Railroad, 69 Mo. 416; Smith v. Railroad, 69 Mo. 32; Price v. Railroad, 77 Mo. 510; Flynn v. Railroad, 78 Mo. 195; Roberts v. Telephone Co., 66 S. W. 157; Bair v. Heibel, 103 Mo. App. 621; Higgins v. O'Keefe, 79 Fed. 900. (2) The court erred in giving instruction numbered 1, asked by respondent. (a) Because said instruction proceeds on the theory that the master is an insurer of his servant. This is not the law. Minnier v. Railroad, 167 Mo. 119. (3) (b) Said instruction is erroneous because there is no evidence upon which to base certain portions thereof. Stone v. Hunt, 114 Mo. 66; State v. Hope, 102 Mo. 410; Evans v. Interstate Co., 106 Mo. 594; State v. Brown, 145 Mo. 680; Wilkerson v. Eilers, 114 Mo. 245. (4) The court erred in giving the second instruction asked by respondent. (a) Said instruction is erroneous in that it improperly states the degree of care which it is incumbent upon a minor to exercise. Payne v. Railroad, 136 Mo. 562; Nugent v. Milling Co., 131 Mo. 252. (b) It is further erroneous in that it requires a finding that the respondent, a minor, did not have the capacity of an adult. There is no testimony upon which to base such a finding.

*Johnson, Houts, Marlatt & Hawes* and *Charles D. Francis* for respondent.

(1) The causal connection between the negligence shown on the part of defendant in leaving a hole in

the floor and the injury was well established. (a) It was a matter of fair and reasonable inference from the facts shown that the truck was thrown by reason of a castor falling or running into the hole. Hudson v. Railway, 32 Mo. App. 676; Buesching v. Gas Light Co., 73 Mo. 219; Settle v. Railway, 127 Mo. 326; Cambron v. Railway, 165 Mo. 558; Duggan v. Railway, 46 Mo. App. 268; Schultz v. Moon, 33 Mo. App. 339; Thompson on Negligence, par. 161, p. 158. (b) The negligence in the case consisted of neglect of the master's duty to provide a safe place to work and suitable appliances with which to work. The servant cannot assume the risk of injury arising from such negligence on the master's part. Settle v. Railway, 127 Mo. 336; Pauck v. Beef Co., 159 Mo. 467; Curtis v. McNair, 173 Mo. 270; Cole v. Transit Co., 183 Mo. 81; Blundell v. Mfg. Co., 189 Mo. 552; Stafford v. Adams, 113 Mo. App. 724; Daken v. Mercantile Co., 94 S. W. 951; Obermeyer v. Logeman, — Mo. App. —. (2) The instruction given as to degree of care required of a child is correct. Berger v. Railway, 112 Mo. 249; Riley v. Railway, 68 Mo. 662; Anderson v. Railroad, 81 Mo. App. 121; Anderson v. Railroad, 161 Mo. 424; Duffy v. Railroad, 19 Mo. App. 383; Thompson v. Railway, 93 Mo. App. 557; Fry v. Transit Co., 111 Mo. App. 333; Holmes v. Railroad, 190 Mo. 107; Rogers v. Printing Co., 103 Mo. App. 688.

STATEMENT.—Plaintiff was hurt in an accident in defendant's factory on August 26, 1904, and seeks compensation for the injury. The products of the factory were well buckets and stove pipes. Separate gangs of men commonly worked in the making of those articles, but the men alternated to some extent between the gangs. Plaintiff was about a month over fifteen years of age at the time of the accident and had been in defendant's employ a year or more. His usual duty was putting screws in the bottoms of well buckets, but oc-

casionally he worked with the stove pipe gang and had been doing the latter work three weeks prior to the accident. He was perfectly familiar with that work. His work on the stove pipes was to "notch" them on the notching machine. The sheets of iron out of which the pipes were made were first cut the proper size at a cutting machine in the same room with the notching machine. The men at the cutting machine, after cutting the sheets of iron, would pile them on top of a truck and it was part of plaintiff's duty, with the help of another hand or two, to roll this truck with the sheets of iron on it, over to the notching machine, which was about the same height as the truck, and then notch the sheets. The trucks in use were about thirty-two inches high with tops twenty-six by twenty-seven and three-fourths inches. The construction of the trucks is as follows: four upright standards of massive size running on castors, with crosspieces at the top and foot, constitute its frame, except that there is another crosspiece extending diagonally from the base to the top on either of the four sides. The top is a flat board, or several boards, covered with a sheet of zinc, the general appearance of the appliance being that of a strongly built but rough, table, moving on castors. These castors are each two inches in diameter and there are two of them at either of the four corners of the truck. They are set on crooked stems or shanks running upward into sockets in the foot of the legs or standards of the truck. The testimony for the plaintiff goes to show that the distance between the castors across the front and rear of the truck is only nineteen and one-half inches and between those along the two sides only twenty and one-half inches, while the framework of the truck which rests on the castors is, as said, about twenty-six by twenty-seven and three-fourths inches. The pieces of sheet iron loaded on the truck to be moved from the cutting machine to the notching machine, were about the size of the top of the truck

and weighed about one pound each. The evidence conflicts as to how many were put on for a load. The testimony for plaintiff shows that sometimes three hundred were and that about that many were on the truck when plaintiff was hurt; that is to say, three hundred pounds, piled a foot above the top of the truck. These sheets of iron were oiled before cutting in order to keep them from rusting. Plaintiff's testimony is that usually he and another boy would roll one of the trucks from one machine to the other, but that occasionally the load was too heavy for them and then they would call to their help another hand who worked in the room, who would push while they pulled the truck. The testimony goes to show that the floor of the room was somewhat rough, with knot holes in it. One of these holes was in the path over which plaintiff was moving the loaded truck at the time of his injury. It was one and a quarter inches in diameter. Some evidence for the defendant tends to show it had been covered with a piece of zinc or other metal prior to the accident, but there was contradictory testimony on that question, as witnesses for the plaintiff swore it was not covered until after the accident. While plaintiff and the two other hands were rolling a truck loaded with heavy sheet iron, it suddenly gave a lurch or jostle and the sheets of iron, slipped off, falling on plaintiff, knocking him down and hurting both his arms, particularly the right one. This arm had several deep gashes cut in it, the muscles and tendons being severed, causing a partial loss of control of the thumb and one of the fingers. That is to say, the thumb could not be rotated or the finger straightened. He was laid up until the latter part of September, his wages meanwhile being paid by the defendant. In September he resumed work but quit the following March and instituted this action for damages. As to just how the accident occurred, according to plaintiff's theory will appear from certain excerpts from the testimony of the witnesses.

George Roesler testified as follows:

"Q. Tell the jury about where it happened and how it happened? A. Well, it was about four feet on the northeast side of the post where the desk was. There was a knot hole there and he started to pull the truck and the iron slid off. Peter Papos was behind the truck pushing it. . . . four feet northeast of the desk? A. Yes, sir.

"Q. And this was about four feet — you said about four feet northeast of the desk? A. Yes, sir.

"Q. Of the post where the desk was? A. Yes, sir.

"Q. How do you know the hole was there? A. Because I saw it there.

"Q. How long did you see it there? A. Ever since I started there."

C. D. Francis, who inspected the premises later, made the following statement:

"Witness (answer continuing). — Four feet east and three feet north of the desk I found one hole there from an inch and a quarter to an inch and a half in diameter, worn considerably, possibly a knot hole."

John Koenig testified as follows:

"A. I mean, say five feet of the desk and cutting machine, what was the condition around there of that floor before Louis Longree was hurt? . . . A. The floor had knot holes in it.

"Q. Where were the knot holes? A. Right north from the desk, that knot hole.

"Q. How long had it been there, when did you first see it? A. I saw that way before Lawrence got hurt.

"Q. How long before he got hurt? A. About six months.

"Q. Now, did you see that after that time? A. Yes, sir. I saw the hole after he got hurt.

"Q. The hole that you saw after, was that the same hole that you saw before? A. Yes, sir.

"Q. Where these trucks run, how close to where they used to carry these trucks was that hole? A. Right alongside of it."

Plaintiff's testimony was as follows:

"Q. And how large was that hole? A. It was about an inch and a quarter.

"Q. Will you point out on your fingers about what you mean by that? (Witness illustrates.) A. It must have been about that big.

"Q. Was it square or round? A. It was round.

"Q. Had you ever seen that hole there before? A. No, sir.

"Q. Never had? A. No, sir.

"Q. When you went from the cutting machine to the notching machine, as you stated, one hundred times or more during the three weeks before this accident, you had never seen that hole there? A. No, sir. . . .

"Q. Now then, how far did you get with it, how far did you get along with it before it turned over? A. I had gone several feet and I felt the truck give a jerk, and I looked forward and saw the iron sliding off.

"Q. Then what happened? A. Then after the iron slid on me I didn't know no more until I got to the office. . . .

"Q. Now, where was it; what direction from these machines? A. This east and this is north and this is south (indicating)? A. It was a little southeast from the cutting machines.

"Q. Can you tell me amout how many feet away it was? A. It was about three to six feet, I guess.

"Q. Now which way was it from the desk? A. It was a little northeast.

"Q. Northeast from the desk. Now, were you unconscious? Did you become unconscious, Lawrence? A. Yes, sir.

Oscar Roesler testified:

"Q. Did you see the truck turn over? A. Yes, sir.

"Q. How close to that hole was it that truck turned over, Oscar? A. You mean after it was turned over or when it was laying there?

"Q. Yes, take it that way; when it was laying there: how close to the hole was it? A. It was laying right over the hole.

"Q. Right by the hole? A. Yes, sir. . . .

"Q. What did you see? Tell the jury how this happened, as well as you can, yourself, in your own way; just tell them how this happened? A. Lawrence was pulling on the truck and Peter Papos was pushing the truck. Peter Papos was shoving the truck and the truck slid over and the iron slid off and caught Lawrence's wrist."

George Roesler testified:

"Q. Did you see this accident happen? A. Yes, sir.

"Q. Tell the jury about where it happened and how it happened? A. Well, it was about four feet on the northeast side of the post where the desk was. There was a knot hole there and he started to pull the truck and the iron slid off. Peter Papos was behind the truck pushing it.

"Q. And where was Louis Longree? A. Lawrence was in front of it pulling it.

"Q. And this was about four feet — you said about four feet northeast of the desk? A. Yes, sir.

"Q. Of the post where the desk was? A. Yes, sir.

"Q. How do you know that that hole was there? A. Because I seen it there."

John Helfrich testified:

"Q. What was the condition of the floor around where this iron was laying? A. It was all cut up with the iron.

"Q.  Anything else?  A.  There was a knot hole.

"Q.  How far from where this truck was laying?  A.
When I got there — the iron slid out further from the
knot hole and they pulled the truck over there and put
the iron on it and it was past the knot hole already.

"Q.  How much past it?  A.  About a foot or a foot
and a half.

"Q.  About a foot or a foot and a half past the knot
hole?  A.  Yes, sir."

Defendant's testimony went to show that in moving
the truck plaintiff jerked it repeatedly and that one of
the jerks tilted it over and caused the iron to fall off.
The foreman of the shop testified that he saw plaintiff
jerking it and shouted to him to forbear.  Plaintiff's tes-
timony is inconsistent with the theory that the overturn-
ing of the truck was due to his jerking it.  It was proved
by plaintiff himself that he had moved the same truck,
loaded with iron, several hundred times within the pre-
ceding three weeks and knew all about its condition and
the condition of the floor.  The foreman of the room
swore he had never noticed the particular knot hole into
which plaintiff insists one of the castors sunk, thereby
tilting the machine; that there were many holes in the
floor.

One assignment of negligence is that the truck itself
was unsafe in that it was topheavy and of unstable
equilibrium because of the small size of its base in com-
parison with the top, and that the respective dimensions
of the top and base were diminished when all the four
castors happened to turn inward.  Certain other faults
in the construction of the truck were alleged, but, as
they were not carried into the instructions, they need not
be given.

Another assignment of negligence is that the floor
was allowed to be rough and uneven, with holes in it
in the path of the truck, so that the wheels or castors
would catch in them with a likelihood of upsetting the

machine. It was further averred that these imperfections in the truck and in the floor were known to defendant, or had existed so long that, by the exercise of ordinary care, they could have known. Plaintiff was fifteen years old and acquainted with the work.

The court refused to direct a verdict for the defendant and also refused to instruct the jury that there was no evidence to prove the truck was improperly constructed, or that plaintiff's injuries were due to its improper construction.

At plaintiff's request these instructions were given:

"1. The court instructs the jury that if you find from the evidence that at the time the plaintiff was hurt, the truck about which plaintiff was working was loaded with a heavy weight of sheet iron, and that it was of such width and such heighth that it was defective and unsafe when pulled or pushed across a rough floor, and one containing holes, and when so pulled or pushed it was likely to tip over and injure plaintiff; and if you find that the floor across which plaintiff was required to move such truck was rough and had holes in it; and if you find that by reason of the said construction of said truck, and the said condition of the floor, there was danger of said truck with its said load of iron upsetting and injuring the plaintiff, and that the defendant and its officers in charge thereof knew of said construction of the truck and said condition of the floor and the danger of moving the same, when loaded, across said floor — or that, by the exercise of ordinary care, they would have known of such danger, in time to have remedied it by the exercise of ordinary care; and if you find that the plaintiff was, on the 26th day of August, 1904, instructed by his foreman to move said truck with its said load across said floor, and that plaintiff was exercising due care on his part, and that while so moving said truck it did by reason of the said condition of the floor and said condition of the truck, upset and

throw said iron upon plaintiff and injure him, then your finding will be for the plaintiff.

"2. The court instructs the jury that due care on the part of a child does not require the judgment and thoughtfulness that would be expected of an adult person under the same circumstances; therefore, in determining whether or not plaintiff in this case was exercising due care on his part at the time he was injured, you should consider his age and capacity, and if you find that he was at the time of his injury, a boy of immature age and had not the capacity of an adult and that he' exercised such care as ought reasonably to have been expected from one of his age and capacity under like circumstances, then he was not guilty of contributory negligence."

At defendant's request the court instructed as follows:

"5. The court instructs the jury that in deliberating upon your verdict, the jury will banish from their minds all considerations of mere sympathy or prejudice either for or against either of the parties hereto, and base their verdict upon the evidence in the case and the instructions given by the court.

"6. The court instructs the jury that if you find from the evidence that all the details of the surroundings amid which plaintiff was working on the occasion in question, and all the details of the truck mentioned in the evidence were open and obvious, and were known to plaintiff, or by the exercise of ordinary care, would have been known to plaintiff, and that any and all dangers incident to working with said truck amid such surroundings were open and obvious, and were known to' plaintiff, or by the exercise of ordinary care, would have been known to him, and were not latent or hidden, then and in that case the plaintiff assumed the risk of working with said truck amid said surroundings, and your verdict must be for the defendant.

"6½.   The court instructs the jury that if you believe and find from the evidence that the injuries complained of by plaintiff were due to mere accident or misadventure, then and in that case your verdict must be for the defendant, and by the expression 'accident or misadventure' the court means the happening of an event without negligence on the part of any one.

"7.   The court instructs the jury that if you believe and find from the evidence that the plaintiff, on the occasion in question, in pulling the truck mentioned in the evidence instead of pushing same, or in the manner in which he handled said truck, was guilty of negligence, and that the injuries complained of by him were directly due to such negligence on the part of the plaintiff, then and in that case, the plaintiff is not entitled to recover, and you will find your verdict for the defendant.

"8.   The court instructs the jury in reference to the charge made in plaintiff's petition, that the truck mentioned in the evidence was defectively constructed, that it was not the duty of the defendant to furnish the plaintiff a truck to work with from which pieces of sheet-iron could not slip.   In other words, the court instructs the jury that the defendant was not an insurer of plaintiff and was not bound to furnish a truck which was absolutely safe and from which pieces of sheet iron could not, under any circumstances, slip.   On the contrary the court instructs the jury that the defendant discharged its entire duty toward the plaintiff in reference to said truck if it used a truck that was reasonably safe for plaintiff, provided plaintiff exercised ordinary care for his own safety.   And if you further believe and find from the evidence that for persons exercising ordinary care in the use thereof, the truck mentioned in the evidence was reasonably safe, then and in that case the plaintiff cannot recover against the defendant on account of the construction of said truck.

"9. The court instructs the jury that the plaintiff. charges in his petition that the floor in the vicinity where plaintiff was working was rough, and on account of said rough condition the truck mentioned in the evidence was apt to be upset or overturned. The court instructs the jury that the defendant was under no obligation to furnish plaintiff with a floor that was absolutely smooth, or a floor upon which the truck mentioned in the evidence could not be upset or overturned. On the contrary the court instructs the jury that if you believe and find from the evidence that the floor mentioned in the evidence was reasonably safe for handling the truck mentioned in the evidence, provided the person handling the truck exercised ordinary care for his own safety in the handling of same, then and in that case, the defendant was guilty of no negligence in connection with said floor.

"10. The court instructs the jury that the plaintiff claims in his petition that the injuries complained of by him were due to one of the castors or the wheels of the truck mentioned in the evidence being caught in or falling into a hole in the floor and that the defendant knew of the existence of said hole, or by the exercise of ordinary care would have known of the existence of said hole long enough before the time of the accident to have repaired the same. And the court instructs the jury that before you can, under any circumstances, find your verdict for the plaintiff, on account of the existence of said hole, you must find that the plaintiff has proven, by a preponderance or greater weight of the evidence, that there was an open hole just where the truck was when the plaintiff was injured, that said hole caused the truck to upset, and that the presence of said hole in that place and the liability of the castor to be caught in same, was known to the defendant, or by the exercise of ordinary care, would have been known to the defendant, and that defendant was guilty of negligence in al-

lowing said hole to be there. And the court instructs the jury that even though you believe and find from the evidence that the tilting of said truck was due to the castor thereof getting into the hole of the floor and that the presence of said hole was known to the defendant, or by the exercise of ordinary care would have been known to the defendant; yet if you further believe and find from the evidence that the presence of said hole was equally obvious to the plaintiff as to the defendant, and that the presence thereof was known to the plaintiff, or by the exercise of ordinary care would have been known to the plaintiff, and that plaintiff, in allowing the castor of said truck to get into same, was himself guilty of negligence, then and in that case, plaintiff is not entitled to recover, and you will find your verdict for the defendant."

The jury returned a verdict in plaintiff's favor for $2,500, and defendant appealed.

GOODE, J. (after stating the facts.)—1. In support of the point that a verdict should have been directed in defendant's favor, its counsel advances these propositions: First. There was no evidence tending to show plaintiff's injuries were due to any of the acts of negligence charged in the petition. Second. The court having required the jury to find the iron was dumped on plaintiff by reason of one of the castors having sunk into a knot hole, it must be taken for granted that this was the ground of the verdict. But such a finding was a mere conjecture or surmise, unsurported by any evidence to show that, in truth, a castor ran into the hole. Third. The plaintiff had assumed the risk of the injury.

As to the last proposition, we remark that if the negligence of the defendant caused the accident, then the plaintiff did not assume the risk, according to the current decisions of the Supreme Court. [Blundell v.

Mfg. Co., 189 Mo. 552, 88 S. W. 103; Dakan v. Mercantile Co., 94 S. W. 944.]

We find no evidence to show the truck was badly constructed in itself and for use on a smooth floor. There may have been negligence in loading too many sheets of iron on it, and it looks a great deal like overloading had much to do with the accident. Negligence in that regard was not charged, nor is there such conclusive proof that the accident was due to such negligence as would justify us in denying a recovery on the negligence actually charged. Now assuming that the floor was rough, with many holes in it, as the evidence tends to prove, the question in this connection is, could the jury reasonably infer from the evidence that the machine, constructed as it was and with the floor in that condition, constituted a failure on the part of the defendant to furnish plaintiff a reasonably safe appliance to use and a reasonably safe place to work? As said, the truck itself might have been safe enough on a smooth floor, and the floor might have been safe enough with a truck half as high as this one and of the same dimensions, or the same height and twice the length and breadth. But the truck plaintiff was using was intended to be rolled over a floor with holes in it wherein the castors were liable to catch; and, considering its heighth and the size of the truck's base in proportion to the size of the top, we think the inference was fair that it was topheavy, unstable and likely to topple the iron off if a jostle occurred by a castor sinking into a hole in the floor, and thereby injure the employees who were using it. The danger, too, was not remote and unlikely to be realized until an accident happened. It could be foreseen and prevented. [Anderson v. Box Co., 103 Mo. App. 382, 77 S. W. 486.] In other words, the machine and the floor might well be found not to constitute performance by the master of his duty to use reasonable care for the safety of his servants in the appliance fur-

nished them and the place where they were required to work.

The court gave liberal instructions in favor of the defendant on these points; advising the jury in the eighth instruction for the defendant that it was not bound to furnish plaintiff a truck which was absolutely safe and from which pieces of iron could not slip, but one which was reasonably safe if plaintiff exercised ordinary care; and in the ninth instruction for defendant the same rule was laid down regarding the floor, the jury being told that defendant was under no obligation to furnish plaintiff a floor which was absolutely smooth or on which the truck could not be overturned. We agree to these propositions of law, but think it was for the jury to say whether or not the floor was reasonably smooth and the truck reasonably safe when used together; and if they were not, whether the defendant had been guilty of want of ordinary care in not making them reasonably safe. [Henry v. Railroad, 109 Mo. 488, 19 S. W. 239.]

No witness swore positively that a castor sank into the knot hole which was at the spot where the machine turned over. Many witnesses swore there was a hole there and that the machine was lying over it after it fell. It would be nearly impossible for a bystander to see a castor in the hole unless it happened to lodge there. But as the castors were two inches in diameter and the knot hole an inch and a quarter, the machine might turn over by the jostle caused by one of the castors sinking into the hole, and the castor rise out of the hole when the machine fell. In view of the testimony going to show the hole was there, that the machine was being steadily moved and without jerks, and that all at once it jostled and fell, we think the jury were entitled to infer that it was overturned by a castor getting into the hole. Juries must often reason according to probabilities; drawing an inference that the main fact in issue existed, from col-

lateral facts not directly proving but strongly tending to prove its existence. [Hudson v. Railroad, 32 Mo. App. 667, 676; Duerst v. Railroad, 163 Mo. 607, 622, 63 S. W. 827.] The vital question in such cases is the cogency of the proof afforded by the secondary facts. How likely, according to experience, is the existence of the primary fact if certain secondary facts exist? Of course, the probability that the main fact exists because the subordinate ones do, may be so weak that a conclusion to that effect will be a mere guess. This was not true in the present case. On the contrary, fair and reasonable men might believe the cause of the overturning of the truck was a castor running into the knot hole. The following cases in which the inference of negligence was sustained, rest on circumstances sufficiently analogous to make the decisions relevant. [Camborn v. Railroad, 165 Mo. 543, 558, 65 S. W. 745; Buesching v. Gas Light Co., 73 Mo. 219.] Our conclusion is that the court rightly submitted the question of defendant's liability to the jury.

2. Complaint is made of the first instruction granted at plaintiff's request, on the ground that it permitted the jury to find the truck was defective and unsafe when there was no evidence to that effect. The word "defective" might have been omitted; it is ambiguous. All the parts of the truck were complete and it was not shown to be deficient in anything it ought to have had. It should be observed that the instruction did not permit the jury to find the truck in itself was an unsafe appliance, but that it was unsafe when pushed or pulled across a floor rough and containing knot holes, and when so pushed was likely to topple over and injure plaintiff. As indicated above, the jury might well find the appliance was unnecessarily dangerous to be used on defendant's floor. The instruction, however, is faulty in not defining the degree of danger the jury should find was incident to the use of the truck on the

floor. The jury should have been required·to find that it was not reasonably safe instead of that it was unsafe in any degree. Indeed, they were required to make that finding in other instructions and, perhaps, on that account we would not be warranted in reversing the judgment for the omission in this one. The court rightly instructed that the measure of defendant's duty was to use ordinary care to have the truck and floor reasonably safe. [Bowen v. Railroad, 95 Mo. 268, 8 S. W. 230.]

3. We think error was committed in the first clause of the second instruction granted for the plaintiff. This clause told the jury that due care on the part of a child does not require the judgment and thoughtfulness which would be required of an adult person under the same circumstances. The remainder of the instruction was a sufficient statement of the law in regard to the degree of care for his own safety that plaintiff was bound to exercise. Perhaps remarks can be found in judicial opinions in cases where the injured child was very young, like the first clause of the instruction, though we do not remember having seen any containing that exact phraseology. Not only the age, but the experience and capacity of a minor, enter as factors into the degree of care he is required to observe. This boy was fifteen years old and had had a year's experience in the work he was doing; and though the law did not exact of him absolutely as much care as would have been required of a person of full age, neither was he absolutely excused from that degree of care. A minor employee may be old enough and possess sufficient maturity of judgment experience and emotional control, to be as capable of looking out for his safety as he is a year or two later, when of full age. The question is one of fact, not of inflexible legal rule, save when the child is of such tender years as to be presumed to be incapable of properly caring for itself. The rule on the subject has been frequently stated by the Supreme and Appellate Courts of this State, but

in no case better than in Burger v. Railroad, 112 Mo. 238, in which the court said: "The rule is believed to be recognized in all the courts of the country, that a child is not negligent if he exercises that degree of care which under like circumstances, would reasonably be expected of one of his years and capacity." To the same effect are Anderson v. Railroad, 81 Mo. App. 116; Thompson v. Railroad, 93 Mo. App. 548, 67 S. W. 693, and Anderson v. Railroad, 161 Mo. 411, 61 S. W. 874. All the decisions on the subject, so far as we know, take into consideration the proved capacity of the boy to understand the danger to which he was exposed, as well as his age. Now the first clause of the instruction in question stated flatly that due care on the part of a child, presumably plaintiff, did not require the judgment and thoughtfulness that would be expected of an adult person. What was due care on his part was to be determined by the jury on all the facts going to show his age, experience and capacity.

The judgment is reversed and the cause remanded. All concur.